## SPARROW *v.* STRONG.

1. Under the ninth rule of this court, a writ of error or appeal from any judgment or decree rendered thirty days before the commencement of the term may be docketed and dismissed on motion of the defendant in error or appellee, unless the other side dockets the cause and files the record with the clerk of the court within the first six days of the term. But if no motion to dismiss be previously made, the record may be filed and the cause docketed at any time within the term.

2. The value of a "Mining Claim" in Nevada may be the subject of estimate in money; and this court will take jurisdiction of a suit concerning such a claim, if of the requisite value, though the land where the claim exists has never been surveyed and brought into market. [The claim may perhaps exist under the old governments of Spain or Mexico. Moreover, mining interests, apart from fee simple rights in the soil by patent, existed before the act of Congress of February 27, 1865, under the implied sanction of the Federal Government.]

3. When the judgment brought before this court by writ of error purports to affirm generally the judgment of a court inferior to the affirming court; and the only judgment in the record of such inferior court is a general judgment; this court will take jurisdiction, though an appeal has also been taken in the inferior court, under State laws, upon a motion refusing a new trial, and there are some indications in the record that this affirmance was intended to be of that refusal.

SPARROW brought an action in the nature of an ejectment in the District Court for the first judicial district of Story County, *Nevada Territory*, to recover an interest in a *Mining Claim*, a sort of interest very common in the argentiferous Territory just named.

The case was tried before a jury upon a considerable body of evidence, and a verdict having been given for the defendant, a judgment in the nature of a judgment in ejectment was regularly rendered by the court upon it.

Subsequently, a *motion for new trial* was made. A statement embodying all the evidence was drawn up and agreed to by counsel, and upon this statement and some affidavits tending to show surprise on the trial, and new evidence discovered after trial, the motion was argued before the District Court. It was overruled, and from the *overruling order* an appeal was taken, on the 15th November, 1862, to the *Su-*

*preme Court of the Territory*, under an act of the Territorial legislature authorizing *such* appeals.

On the 16th of March, 1863, the Supreme Court gave judgment in the cause as follows:

" On appeal from the District Court of the first judicial district in and for Story County.

" Now, on this day, this cause being called, and having been argued and submitted and taken under advisement by the court, and all and singular the law and the premises being by the court here *seen* and *fully considered*, the opinion of the court herein is delivered by Turner, C. J. (Mott, J., concurring), to the effect that the *judgment* below be affirmed.

" Wherefore it is now *ordered, considered,* and *adjudged* by the court here, that the *judgment* and *decree* of the District Court of the first judicial district in and for Story County, *be and the same is affirmed* with costs."

From this judgment of the Supreme Court of Nevada a writ of error was taken here; the affidavit filed being the ordinary one, that " the value *of the property in dispute*" exceeded $2000. The record did not show any bill of exceptions.

A rule of this court (the ninth), requires that when a writ of error shall be brought to it from any judgment or decree rendered thirty days before the commencement of the term— which this writ was—it shall be the duty of the plaintiff " to docket the cause and file the record thereof with the clerk of this court, within the first *six* days of the term." In the present case the writ of error was properly sued out, August 14, 1863, returnable to the next term of the court; and was regularly served. A citation was also served returnable to the same term. *After* the writ, citation, and record were filed and the cause docketed, a motion to dismiss the case was made and argued at the last term:

1. Because the record was not filed in time by the plaintiff in error.

2. Because the interest in controversy was not capable of a money valuation; and, therefore, not of the value, within

the meaning of the statute, of one thousand dollars, the amount necessary to give jurisdiction to this court.(a)

To understand the force or want of force of this second objection it is necessary to state, on the one hand, that the Territory of Nevada from which the case came, was formerly part of the province of Upper California, and belonged first to old Spain, afterwards to Mexico, and was acquired by the United States only in 1848, by treaty;* and that our government, as yet, had made no grants of its public lands there or of any rights in them. Of course no one could hold anything by patent or other formal grant from this government, in which, subject to prior private rights, everything still remained vested. On the other hand, it is to be stated that in the treaty referred to† it is admitted that previously to our acquisition of it, the ceded territory had been settled to some extent by the authority of pre-existing governments, and that all rights thus existing are made inviolable. In fact, immense estates in California—a part of the acquired territory—rest on the titles derived from the "former governments."‡

Congress had also established, in March, 1861, when Nevada, previously a part of Utah, was made a Territory by itself, a government for that Territory; having a legislature with the usual powers of these bodies in the Territories; and this legislature had acted on the development of the mines as a subject more or less within its competence.

---

(a) A third ground was made at the last term for dismissing the case, to wit: That the jurisdiction of this court, if it ever had any, was taken away by an act of Congress (passed between the time of granting the writ of error and the date of the motion to dismiss), admitting the State of Nevada into the Union, without any provision which should save the jurisdiction vested in this court by the act organizing the Territory. This omission was, however, supplied by an act of Congress of February 27, 1865, which was held valid and effectual by this court in Freeborn v. Smith (2 Wallace, 160), at the last term. This third ground relied on for dismissal was, therefore, as the Chief Justice observed, now necessarily to be regarded as untenable.

* Treaty of Guadalupe Hidalgo, made after the war of 1847, between Mexico and the United States, 9 Stat. at Large, Treaties, p. 922.

† Articles 8th and 9th.

‡ See the Sutter Case and the Fossatt Case, 2 Wallace, 564, 649.

Independently of this, however, a special kind of law—a sort of Common Law of the miners—the offspring of a nation's irrepressible march—lawless in some senses, yet clothed with dignity by a conception of the immense social results mingled with the fortunes of these bold investigators—had sprung up on our Pacific coast; and presented, in the value of a " Mining Right," a novel and peculiar question of jurisdiction for this court.*

The case, however, was not disposed of at the last term, nor either of the two points already mentioned passed on. It was ordered to stand over for argument on another point, the point, to wit, whether the judgment of the Supreme Court of Nevada, above referred to, was a final *judgment or decision* reviewable here within the meaning of the act of Congress organizing the Territory; an act which gives this court jurisdiction to review "*the final decisions*" of the Supreme Court of the Territory.

*Messrs. Browning and Cope, for the motion to dismiss,* argued

---

* This Common Law of the miners was described, soon after the decision here reported was made, by a Senator of the United States, from the Pacific coast, in a manner so full and interesting as to have attracted general notice. I refer to the remarks made by Mr. Senator Stewart of Nevada, in the Senate of the United States, in June, 1865, and in which the justice and wise policy of the decision above given was shown and enforced.

The reader will not feel, I hope, that I incumber the report with matter wholly irrelative by the extract which I give in an Appendix, No. 1.

Mr. Stewart remarks that the Common Law of the miners has to some extent had the sanction of Congress; though, with "one single exception," no *statute* had been enacted to give it force.

This exception was exhibited at the Congressional session of 1865–6, when the following law (*Act of Feb.* 27, 1865, 13 *Stat. at Large,* 441) was passed:

" No possessory action between individuals in any of the courts of the United States for the recovery of any mining title, or for damages to such title, shall be affected by the fact that the paramount title to the land on which said mines are, is in the United States; but each case shall be adjudged by the law of possession."

This statute of Feb. 27, 1865, to which Mr Senator Stewart refers, as the "one single exception," the reporter supposes, would have rendered the last question in the present case free from difficulty had the law existed when the case first arose, but it did not.

at the last term and at this on the *three* several points as follows:

I. *As to the time at which the record was filed and the cause docketed.* The language of the ninth rule is imperative. It is a general rule and as obligatory while in force as a statute. The record, confessedly, was not filed within the first six days of December Term, 1863. It was therefore not filed as the rule exacts, and the writ should be dismissed on this ground.

II. *As to the value of the subject in controversy.* The affidavit, which is filed in the case, declares indeed that "the property in dispute" is of the value of two thousand dollars; a sum sufficient, we admit, to give the jurisdiction. But the matter in dispute is a "Mining Claim." The land in which the mine exists belongs still to the General Government. It has never been surveyed nor brought into market. No pecuniary value can be attached to the possession by a claimant of anything of which the ownership is in another person. In this case the possession is one amounting in strict law to a trespass; at best, to a tenancy at will of the government. It may be terminated at any moment. Its value depends upon the course which the government may pursue in asserting or omitting to assert its right of ownership. Whatever the occupant may hope for or even expect; whatever the government may in the benignant course of its dealings see fit hereafter to do by such a person, it is plain that he has neither right, title, interest, claim, nor demand in or to the property in suit. Such an estate, or no-estate as it more truly is, cannot be estimated in the sense which the law requires to give jurisdiction. Is not *Lownsdale* v. *Parish*,* in this court much in point? There the matter in dispute was a piece of real estate in Oregon Territory, which Territory then happened to be claimed by the United States and by Great Britain, at once; the subjects of the two governments, occupying the region only by virtue of a treaty between the two nations. How the title might ultimately be settled and

---

* 21 Howard, 290.

to which government the land might finally pass, was, of course, a matter resting in speculation; dependent upon what the two governments might or might not do; just as here what the one government may or may not do. This court there held that the title to the subject of controversy was not capable of estimate in the sense required by law to give jurisdiction to this court.

III. *On the last point—the point on which the case stands over—* "*Is the judgment a final one?*" However the matter may be disguised, or the mind misled by the technical words, "judgment," "decree," &c., and the old-fashioned formula of "seen," "fully considered," &c., used in the record, it is obvious that the judgment, or decree which has been affirmed, is but the judgment and decree ordering a *new trial;* nothing else. In other words, that the terms "judgment," and "decree," are, in Nevada Territory, and under its peculiar system of law—which makes the granting or refusal of a new trial the subject of review in an appellate court—applied to the *affirmance of the order of the District Court overruling the motion for a new trial.* It is not worth while to be so lost in the *technique* of the law—in the verbality of clerical "entries"—as to forget "that *words* are the daughters of earth and *things* the sons of heaven."

It seems that there was no "assignment of errors." The judgment was probably affirmed for want of one. But as the record stands, this court rests in ignorance of the ground on which the judgment proceeded; and the case stands here simply as a writ of error to bring before this court for revision the decision of the Supreme Court of Nevada, upon a motion for a new trial. Need we say that this tribunal will not review decisions on points resting purely in the discretion of the court below? It was but at the last term* that this court declared, with what seemed to be a special emphasis, and a warning not to bring such cases here, that "its decision has *always* been that the granting or refusal of a new trial is a matter it *cannot* review."

---

* Freeborn *v.* Smith, 2 Wallace, 176.

*Messrs. O' Connor and Billings, contra.*

The CHIEF JUSTICE now delivered the opinion of the court, on all three of the points.

The first ground taken in favor of dismissing the writ of error, to wit, that the record was not filed in time by the plaintiff in error, is untenable. The writ was regularly sued out on the 14th of August, 1863, returnable at the next term of the court thereafter, and was duly served; a citation was also issued and served, returnable at the same term; and the writ and citation, with the record, were returned here and filed, and the cause docketed before the motion to dismiss. It has been repeatedly held that, in such a case, no motion to dismiss, under the ninth rule, can be entertained.*

Nor do we think that the appeal should be dismissed for the second reason assigned by the defendant in error, namely, that the subject of controversy is not of the jurisdictional value. It is insisted that the matter in dispute is a mining claim; that the land where the mine exists has never been surveyed and brought into market; and that, consequently, there can be no mining right to such land in any person, capable of being estimated in money.

It is true, that in the case of *Lownsdale v. Parrish,*† this court held, that an obstruction to the enjoyment of land claimed under a law or regulation of a convention in Oregon, held without the sanction of the United States, and during the joint occupation of that country by Great Britain and the United States, was not an injury capable of being so valued as to give jurisdiction to this court; nor, indeed, an injury of which the courts of the United States could take cognizance at all. But that decision was put distinctly on the ground that Congress, when it came to act on the organization of Oregon, expressly declared that all laws theretofore passed in that Territory, making grants of lands or

---

* Bingham *v.* Morris, 7 Cranch, 99; Wood *v.* Lide, 4 Id. 180; Picketts' Heirs *v.* Legerwood, 7 Peters. 146; Owings *v.* Tierman, 10 Id. 24; **Given** *v.* Breedlove, 15 Id. 284.     † 21 Howard, 290.

otherwise affecting or encumbering the titles to lands, should be and were thereby declared "null and void."

The claim, which the court was asked to protect, was asserted under a law thus declared null and void by the highest legislative authority. It was for this reason that the court refused to take jurisdiction in *Lownsdale* v. *Parrish* and dismissed the appeal.

The writ of error now before us relates to a very different subject of controversy. The Territory, of which Nevada is part, was acquired by treaty. Rights and titles, acquired under ceding governments, remain unimpaired under our government. We cannot know judicially, therefore, that the right and title in controversy was not so acquired. If it was, it certainly may be capable of being valued in money.

But if this were otherwise, we do know that in the act organizing the Territory of Nevada there is no clause annulling grants or claims to land, while large legislative powers are conferred by the Territorial legislature, limited only, as to lands, by the prohibition of interference with the primary disposal of the soil by the United States, and of unequal taxation in certain cases. We know, also, that the Territorial legislature has recognized by statute the validity and binding force of the rules, regulations, and customs of the mining districts.* And we cannot shut our eyes to the public history, which informs us that under this legislation, and not only without interference by the national government, but under its implied sanction, vast mining interests have grown up, employing many millions of capital, and contributing largely to the prosperity and improvement of the whole country.

We cannot dismiss this writ of error, therefore, on the ground that a controversy concerning the possessory right to a mining claim, existing under the express sanction of the Territorial legislature and the implied sanction of the national government, does not relate to a subject-matter capable of being valued in money.

---

* Laws of Nevada Territory, p. 16, § 40, and p. 21, §§ 74, 77.

As the questions, thus far considered, were argued at the last term, the motion would have been then disposed of had not doubts been excited by an inspection of the record, upon the point for the argument of which the motion was ordered to stand over.

It is insisted, on this point, that the judgment is merely an affirmance of the order of the District Court overruling the motion for new trial. If this be so, the judgment itself is, in substance and effect, nothing more; and it is settled* that this court will not review such an order. The granting or refusing of new trials is a matter of discretion, with the exercise of which, by the court below, this court will not interfere. The circumstance that the discretion was exercised under a peculiar statute by an appellate court, and on appeal, cannot withdraw the case from the operation of the principles which control this court.

But the majority of the court does not feel at liberty to disregard the plain import of the terms of the judgment rendered by the Supreme Court of the Territory. It does not purport to be an order or judgment affirming an order overruling a motion for new trial, but a judgment affirming the judgment or decree of the District Court, and the only judgment or decree, which we find in the record, is the judgment for the defendants in the action of ejectment.

If this view be correct, the judgment of the Supreme Court is one to review which a writ of error may be prosecuted. And the record shows that the writ has been regularly sued out and returned. This court therefore has jurisdiction, and it has been repeatedly held in similar cases,† that on a motion to dismiss, the court will look to the regularity of the writ and the fact of jurisdiction. Other questions must, in general, await final hearing.

MOTION TO DISMISS OVERRULED.

* Doswell v. De la Lanza, 20 Howard, 29; Henderson v. Moore, 5 Cranch, 12; Marine Ins. Co. v. Hodgson, 6 Id. 206; Barr v. Gratz, 4 Wheaton, 220.
† Minor v. Tillotson, 1 Howard, 288; Hecker v. Fowler, 1 Black, 95.