SULLIVAN et al. *v.* HENSE et al.

MINING CLAIMS — *manner of locating and conveying.* Before any law was enacted by the territorial assembly, regulating the manner of locating and conveying mining claims on the public domain, that matter was regulated solely by rules or by-laws made by the inhabitants of the district in which the claim was situated, or in the absence of such rules and by-laws, by the local customs and usages of the district.

In the year 1860, a valid location of a mining claim on the public domain could be made only according to the rules, usages and customs of miners in the district where such claim is situated.

EVIDENCE — *as to rules, usages and customs in mining districts.* Judicial notice cannot be taken of the rules, usages and customs of mining districts, and they should be proved at the trial like any other fact, by the best evidence that can be obtained respecting them.

MINING CLAIM — *on public land — location of.* Plaintiffs in ejectment, who seek to recover a mining claim upon the strength of their paper title, there being nothing to show that they or their grantors were ever in possession, must prove a valid location of the claim according to the rules, usages and customs of the district prevailing at the time such location was made.

EVIDENCE — *as to execution of a deed.* A deed for a mining claim executed and recorded in the dis trict where the claim is situated, before any act was passed by the territorial assembly relating to such instruments cannot be given in evidence without proof that it was executed by the grantor.

1st. According to the local rules and customs of the district ; or

2d. By the subscribing witnesses (if there are any), as provided in the 15th section of the chapter relating to conveyances. R. S. 109.

*Record or office copy of deed or power of attorney.* A deed or power of attorney cannot be proved by the record thereof, or by a copy taken from the record, except in the manner prescribed by section 19 of the chapter relating to conveyances. R. S. 112.

*The preliminary affidavit* mentioned in that section should be made by all of the persons, plaintiffs or defendants, by whom the record of an instrument, or the copy thereof, is offered in evidence.

*Record or office copy of certificate of location.* A certificate of location of a mining claim may be proved by the record or by a transcript from the record under another statute (R. S. 466), without the affidavit of the party desiring to use it as to the possession of the original certificate.

*As to length of claims by district record.* In the absence of better evidence, the rule or custom of a mining district as to the length of claims located in the district may be proved by the record of such claims.

*Appeal from District Court, Gilpin County.*

EJECTMENT by John H. Hense and Charles O. Welsh against Dennis Sullivan, Theodore E. Wheeler and the Central Gold Mining Company, to recover claim No. 3 west of discovery claim on the Borton lode in Illinois Central District, being in length 100 feet and in width 50 feet. The plaintiffs claimed the right to occupy and possess the premises under the local laws of Illinois Central Mining District, by virtue of a purchase made by them. The defendants pleaded not guilty, and the trial was had at the April term, 1873, of the district court. The plaintiffs gave evidence tending to prove that the Borton lode was discovered in the year 1860, and that a shaft was sunk on the discovery claim in that year. William D. Arnett, the only witness who seemed to have a knowledge of the fact, testified, that in the year 1860 and up to the latter part of September or the first or middle of October, 1861, he owned and occupied the surface of claim No. 3 west, as a "patch claim," and that no other person was in possession thereof; the plaintiffs also offered parol evidence as to the rule or custom of the district in the year 1860, relating to the length of discovery claims, which was said to be 200 feet; it was also in evidence, that the rules and regulations of the district were at one time in the office of the county recorder, and that they could not be found there at the time of trial; the plaintiffs also gave in evidence a copy of a certificate of location taken from the records of the district, as follows:

SAMUEL WILSON,
Recorded November 2, 1860.

The undersigned claims 100 feet by 50 on the Borton lode, known and described as claim No. 3 west of the discovery.

SAMUEL WILSON.

*November 3, 1860.*

Also, copy of a warranty deed from Samuel Wilson to John B. Goldsberry, conveying claim No. 3 west of the

discovery on the Borton lode, dated October 6, 1861, witnessed by James Tolman and Ben Short; also, copy of a power of attorney from John B. Goldsberry to Henry Chatillon, dated September 21, 1866; also, warranty deed from John B. Goldsberry by Henry Chatillon, his attorney in fact, to John H. Hense, conveying claim No. 3 west from the discovery claim on the Borton lode, dated December 21, 1866; also, quit-claim deed from John H. Hense to Charles C. Welsh, conveying, undivided, one-half of claim No. 3 west on the Borton lode; defendants objected to the certificate of location and to the several deeds, on the ground that it was not shown that they were signed by the persons whose names were attached thereto, and also, upon the ground that the affidavit as to the possession of the original instruments was made by one of the plaintiffs only; it was also objected that no right was shown in Wilson to make the location or to convey. The affidavit as to the possession of the original certificate of location and of the several deeds of conveyance was as follows:

" John H. Hense, being first duly sworn, on his oath, says: That he is one of the plaintiffs in the above-entitled cause, that he desires to use, on the trial of this cause, a certified copy of the record of a certain pre-emption certificate of Samuel Wilson for No. 3 west Borton lode in Illinois Central Mining District in said county and territory, and also a certified copy of the records of a certain deed for the conveyance of said claim No. 3, from said Samuel Wilson to John B. Goldsberry, also a certified copy of the record of a certain power of attorney from said Goldsberry to one Henry Chatillon, being a general power to sell and convey all said Goldberry's interest in and to any mining claim or claims in said territory of Colorado, dated 1st September, 1866, recorded in Gilpin county aforesaid, October 9, 1866, book 30, page 411. That the originals of said papers, and each of them, are not in his possession or power to produce, and they have not been lost or destroyed by any fault of this affiant."

The defendants gave evidence tending to prove that the

claim in controversy was upon the Rhoderic Dhu lode, located in the year 1861; they also put in evidence several conveyances of property on the Arnett lode, but as this evidence is not referred to in the opinion, it is not necessary to set it out; the defendants also offered book two, of the records of the Illinois Central Mining District, for the purpose of showing the length of discovery claims located in that district, and this, upon plaintiffs' objection, was excluded by the court. Upon request of the plaintiffs the court charged as follows:

1st. The court instructs the jury that if they believe, from the evidence, that the Borton lode was discovered and taken up in 1860, and duly recorded in accordance with the customs of miners when said lode was discovered, the said lode or vein was not open to exploration or occupation, and no one could make a second legal and valid discovery on the said Borton vein or lode after the same had been so recorded and taken up.

2d. The court instructs the jury that when two crevices are discovered at a distance from each other, and are known by different names, and it appears that the two are one and the same lode, the persons having recorded on the first discovered lode are the legal owners.

3d. The court instructs the jury that if they believe, from the evidence, that the Borton lode was discovered in 1860, and No. 3, west, was recorded by Samuel Wilson, and that the plaintiffs derived a title from Samuel Wilson and his grantees, and that the defendants worked and occupied said No. 3 at the time of the commencement of this action, claiming it as the Rhoderic Dhu lode, and the jury believe, from the evidence, that the Borton and the Rhoderic Dhu lodes are one and the same, then the plaintiffs are entitled to recover in this action, unless the jury believe, from the evidence, that the Rhoderic Dhu lode was discovered before the Borton was.

Upon request of defendants, the court charged as follows:

1st. The plaintiffs must recover upon the strength of their own title and not upon the weakness of the defendants'.

2d. A mining claim in the year 1860 could only be acquired by occupation and possession of the same, or by compliance with the local laws and customs of the district, if there were any, where the same was situated. If claimed by occupancy and possession, the possession must have been defined and marked by monuments and marks. And if claimed under the local rules and customs of the district, it must be shown what those rules and customs were, and that the person so claiming complied with the same.

The court refused to give the following instruction, asked by the defendants :

2d. The plaintiffs, in order to recover, must prove to your satisfaction what were the rules, customs and regulations of Illinois Central Mining District, if there were any, and that the grantor, through whom they claim to have acquired a title to the premises in dispute, complied with such rules, regulations and customs, and if they have failed to do so, you must find the defendants not guilty.

The jury found the defendants guilty, and that plaintiffs were the owners of the claim, and there was judgment on the verdict.

Mr. Justice WELLS did not sit at the hearing.

Mr. HUGH BUTLER, for appellants.

Messrs. WILLARD TELLER & G. B. REED, for appellees.

HALLETT, C. J. The title upon which appellees obtained judgment in the court below, originated in a location made by one Samuel Wilson on the 3d day of November, 1860. In that year, a shaft was sunk on the discovery claim, and some persons occupied the surface of the claim in dispute as " patch diggings," but it does not appear that any thing was done upon this portion of the lode. On the contrary, Arnett, a witness for appellees, who worked the "patch claim," and was, therefore, well acquainted with the property, testifies that no one, other than himself,

was in possession up to the latter part of September, or first or middle part of October, 1861, and his testimony is not contradicted. Wilson conveyed to Goldsberry, October 5, 1861, and the latter to Hense, one of the plaintiffs below, December 21, 1866. Neither appellees nor their grantors were ever in possession of the lode, and the judgment rests upon the paper title set out in the bill of exceptions. It will be observed that the claim was taken and recorded by Wilson, and that the conveyance to Goldsberry was made before any law regulating such matters was enacted by the territorial assembly. The manner of locating a mining claim upon the public domain, and of conveying title to the same, was then regulated by rules or by-laws made by the inhabitants of the district in which the claim was situated, or in the absence of such rules and by-laws, by the local customs and usages of the district. To give effect to such rules, usages and customs, the legislative assembly, by an act approved November 7, 1861 (1 Sess. 168), enacted that all rights of occupancy, possession and enjoyment of any tract or portion of the public domain acquired before the passage of that act should be ascertained, adjudged and determined by the local law of the district or precinct in which such tract was situated as it existed on the day when such rights were acquired, and if there was no such local law, then by the common custom prevailing in respect to such property, and this provision was retained in the Revised Statutes of 1868 (531), and is still of force. The validity and force of such rules, usages and customs has also been recognized by congress (13 Statutes at Large, 441 ; 14 id. 251 ; 17 id. 91), and by the supreme court (*Sparrow* v. *Strong*, 3 Wall. 97), by which they are established, without doubt or question. We may, therefore, assume that a valid location of the claim in dispute could have been made in the year 1860, only according to the rules, usages and customs of miners in Illinois Central District, where it is situated, prevailing at that time, and it is important to determine in what manner such rules, usages and customs are to be ascertained. To say that the court

is advised as to the nature and extent of such regulations is contrary to the fact, and, therefore, they cannot be the subject of judicial notice.

In California, provision is made by statute for introducing proof of such regulations at the trial (Code of Prac., § 748), and so the practice has been with us from the earliest time. No other course can be pursued, and no good reason is perceived for adopting a different rule. That it may work hardship, in cases where the proof is difficult, or impossible to obtain, is readily understood, but as such proof lies at the foundation of the title, it is impossible to dispense with it. What this evidence shall be, must depend very much upon the circumstances of the case, and it would be difficult to frame a general rule upon the subject. It is well known that in most of the mining districts, rules governing the location and transfer of claims were reduced to writing, and preserved in the records of the district, which were afterward deposited in the office of the county clerk and recorder. In some instances the regulations were printed in pamphlet form, and copies of such pamphlets may be found; in others, no record of them remains, and resort must be had to the testimony of living witnesses, or to other evidence to establish them.

Whenever a copy of the rules can be had, no other evidence of them should be received, for in this, as in all other cases where a fact is to be proved, the law demands reasonable diligence in procuring the best evidence at command. An early statute required that the records, laws and proceedings of mining districts should be deposited in the office of the county clerk (1 Sess. 167), and for the purpose of introducing secondary evidence it may be sufficient in the first instance to show that the local laws of the district are not of record in that office. Such proof was made by appellees upon the trial below, and as it was not contended that a copy of the rules of the district was accessible, oral or other evidence tending to explain or establish the fact, was clearly admissible. There was, however, but little evidence offered upon the trial respecting the rules

and customs of Illinois Central District, and that was directed to one point — the length of the discovery claim. No effort was made to show what was necessary to be done in locating a claim in that district, or that any thing was done according to local regulations. It may have been necessary to sink a shaft on the claim, or to define the location, by monuments or in some other way. We cannot assume that a certificate of location, on the records of the district, was all that was necessary to make a valid title to a mining claim, or indeed that the certificate itself was made according to the local rules of the district. The evidence should show the essential features of a good location in that district, and that Wilson made such a location of the claim in dispute. So, also, the deed from Wilson to Goldsberry, dated October 5, 1861, was not shown to have been executed according to the rules and customs of the district, nor was there any proof of the execution of it. In the 15th section of the chapter relating to conveyances (Rev. Stat. 109), provision is made for proving the execution of a deed attested, as was this one, by subscribing witnesses, and appellees could have pursued that method if they desired to avoid the necessity of proving the rules and customs of the district; but it was necessary to prove the execution of the deed in some way. It is true that the statute declares that the records of mining districts shall be taken as evidence in the courts (Rev. Stat. 466), but this cannot be extended beyond records made according to the local rules and customs of the district. It would be absurd to suppose that the legislature intended to give validity to every instrument which may have been placed upon the records contrary to the local laws and customs of the district, for in that way those laws and customs which the legislature has always sought to perpetuate and enforce would be ignored and nullified. Therefore, it was not enough to show that the deed from Wilson to Goldsberry was found upon the records of Illinois Central District, but proof of the local rules and customs regulating the transfer of mining claims should have been offered in order that it might appear that the deed was executed conform-

ably to those rules and customs, or failing in that, proof of execution should have been made under section 15 of the chapter relating to conveyances. The 19th section of that chapter declares the law upon this point so fully and clearly that no doubt can be entertained respecting it.

Passing to the question of the proof by office copy of the certificate of location, and the several deeds of conveyance, it will be necessary to refer to the statutes bearing upon the point. The act above mentioned (1 Sess. 167) by which the records, laws and proceedings of mining districts are rendered admissible as evidence, does not require preliminary proof of the existence or loss of the instrument recorded, and probably under that act the record of a deed or other instrument which was by law admitted to the record, might have been used without laying a foundation for secondary evidence. In the year 1868, another rule was prescribed upon the same subject in section 19 of the chapter concerning conveyances (Rev. Stat. 112), and although the earlier act was substantially retained in the Revised Statutes of that year (466), we think that the later act should control.

The act of 1861 may be regarded as having effect from the date of its enactment, and probably the legislative assembly of 1868 did not weigh its provisions as carefully as those which were newly prepared and adopted at that session. In the revision, these acts were approved on the same day, but it is fair to presume that the one which was last prepared contains the best expression of the will of the legislature, and for this reason effect should be given to the act of 1868. That act requires that the party desiring to use the record of any deed, bond, agreement or power of attorney, or a transcript thereof, shall make affidavit that the original deed or other instrument is not in his possession or power to produce, and thereupon the record or transcript may be given in evidence with the same effect as the original deed or other instrument. That the oath must be made by all of the persons seeking to use the record or transcript is manifest from the language of the act and the fact to be stated. Generally the word "party," as used in the statute,

will comprehend all who appear on one side of the case either as plaintiffs or defendants, the evidence being available to all who are in that way associated, and all of them being desirous to use it. In the case at bar, it is impossible to apply the word "party" in the sense in which it is used in the statute to either of the appellees, inasmuch as there can be but one party plaintiff in that sense, and they together constitute the party who desired to use the secondary evidence. The purpose of the law is to compel the production of the deed or other instrument, if those who desire to use it have the possession or control of it, and this purpose can only be effected by requiring all of them to testify as to the fact. The affidavit of Hense did not and could not disclose whether the deeds and power of attorney, copies of which appellees gave in evidence, were in possession or under the control of Welsh, and if they were in the possession of the latter, the law certainly required that they should be produced.

The statute demands nothing more than the affidavits of all persons, plaintiff or defendant, as the case may be, as to their ability to produce the original document, which is a great modification of the old rule, and there can be no great hardship in observing its provisions. The affidavit of Hense was not of itself a sufficient foundation for secondary evidence, it being equally necessary that his co-plaintiff should testify in that behalf. The certificate of location is not, however, mentioned in the act of 1868, and as the record of it appears to be within the terms of the act of 1861, no affidavit was required preliminary to its introduction. Doubtless it was necessary to show that the certificate was made according to the rules and customs of the mining district, but the absence of the original document was not matter for objection.

Upon the trial below, appellants proposed to show the rule or custom of Illinois Central District as to the length of discovery claims by the record of claims in the district. In the absence of the rule itself, it may be doubted whether better evidence could have been found. If, at and before

Vol. II.—55

the discovery and location of the Borton lode, the claims recorded in that district were uniformly of a certain number of feet, that circumstance would be evidence tending to prove that the rule of the district prescribed that length of claim. Such evidence would be far more satisfactory than that of a living witness whose memory might be at fault, and therefore it should have been received. Objections to evidence were made, upon which much time might be expended without advantage to the parties in this litigation. Enough has been said to determine the substantial questions presented in this record, and counsel should not ask more.

The judgment of the district court is reversed and the cause is remanded for a new trial.

*Reversed.*