CONSOLIDATED REPUBLICAN MOUNTAIN MIN. CO. v. LEB-
ANON MIN. CO.

1. One acting as the agent of another in perfecting title to a mining lode, who paid no part of the purchase price, owned no individual interest, and conveyed with no covenant of warranty, is not estopped, after his agency ceased, from conveying any other or different title which he thereafter acquired to the premises in controversy.

2. In 1865 the manner of locating lode claims in Griffith mining district, Colorado, was governed by miners' rules and customs; and, to locate and hold a claim, development work, after posting the discovery notice, was requisite.

*Appeal from District Court of Clear Creek County.*

Messrs. MORRISON and FILLIUS and L. C. ROCKWELL, for appellant.

Messrs. HUGH BUTLER and JOHN A. COULTER, for appellee.

HELM, J.    Brown acted as the agent of the Lebanon Company in perfecting title to the Powell lode. He paid no part of the purchase price, owned no individual interest, and conveyed with no covenant of warranty. He appears to have discharged his duties in perfect good

faith. Therefore he was not estopped, after his agency ceased, from conveying to the Republican Company any other or different title which he thereafter acquired to the premises in controversy as a part of conflicting claims.

The so-called "Powell location," upon which appellee relies, was made in July, 1865. The Dryden and Rocky Mountain Mammoth locations, through which appellant claims, were made in September of the same year. The Powell was located simply by posting a notice and recording a certificate. No work of any kind whatever was done thereon at the time of posting the notice, or, so far as the record discloses, for at least six years thereafter. A shaft from two to three feet deep was sunk upon the Dryden, and one from eight to ten feet deep upon the Rocky Mountain lode, in the month of September, when their respective notices were posted and certificates filed for record. During the same fall the depth of the Dryden shaft was increased to six or seven feet.

In 1865 the manner of locating lode claims in Colorado was governed by miners' rules and customs; and, in order to constitute a valid location, compliance therewith was necessary. *Sullivan v. Hense*, 2 Colo. 424.

No objection was made or exception reserved, at the trial, by either party, to the method of proving these rules or customs. Two witnesses testify that no work was then required, either to locate or to hold a claim; but one of them says, "As a general thing, we sunk a hole on every lode we recorded." Three witnesses swear that, under the prevailing customs, it was necessary (one says within thirty, another within sixty, days after discovery) to do some work in order to hold the lode.

Mr. Justice Field, speaking the unanimous view of the supreme court of the United States in *Jennison v. Kirk*, 98 U. S. 453, with reference to these miners' regulations and customs in California, uses the following language:

"They all recognized discovery, followed by appropriation, as the foundation of the discoverer's title, and development by working as the condition of its retention." We think this remark equally true of the rules and customs existing in Colorado prior to statutory enactment on the subject. It is hardly possible that a custom ever prevailed with miners which recognized the right to possession of a lode or lode claim, for an indefinite period, without actual occupancy or some kind of development work. To say that merely posting a discovery notice on the crevice, and recording a certificate stating metes and bounds, constituted such an appropriation as, for a considerable period, prevented another from taking possession and developing the lode, is to recognize a custom that can hardly be considered reasonable,— a custom contrary to the usual experience and practice in appropriations of the public domain and incompatible with ordinary sagacity and appreciation of justice among miners themselves.

The statute of 1861 relating to lode claims, which was still in force, in effect recognizes the fact that development work was required by the existing customs, for section 11 thereof protects the locations of soldiers in the army from forfeiture, because not "represented" (i. e., occupied or developed), till the expiration of nine months after the date of their discharge from the service.

We are of the opinion that in 1865, to locate and hold a mining claim in Griffith mining district, development work after posting the discovery notice was requisite. No annual labor was required by statute for a number of years subsequent to that date, and we are not apprised by the record that an abandonment of either the Dryden or Rocky Mountain lodes at any time took place.

It is unnecessary to indulge in a further consideration of the points presented. The judgment of the district court will be reversed and the cause remanded.

*Reversed.*