## BECKER V. PUGH ET AL.

1. Before either party can recover in an "adverse" mining suit, he must show a compliance with the statutes, state and federal, and local miners' rules and regulations relating to the *location* of mining claims. Proof of occupancy merely will not suffice.
2. The miners' regulations of Gregory district, adopted in 1860, required the locator to indicate by stakes or otherwise upon the surface, the ground or the vein sought to be appropriated.
3. An action in the nature of ejectment is proper in support of an adverse filed in the land office. But the ordinary rules in ejectment are somewhat modified.
4. Under the code, a party is entitled to such relief as his evidence, together with the facts averred in the body of his pleading, justify, regardless of the relief demanded in his prayer.

*Appeal from District Court of Gilpin County.*

Mr. L. C. ROCKWELL, for appellant.

Messrs. TELLER and ORAHOOD, for appellees.

HELM, J. This action was brought by appellees to support an adverse filed in the United States land office. The decree or judgment was rendered in 1882. At that time, therefore, the act of congress of March 3, 1881, was in force. This act reads as follows: "Be it enacted," etc., "that if, in any action brought in pursuance of section 2326 of the Revised Statutes, title to the ground in controversy shall not be established by either party, the jury shall so find, and judgment shall be entered accord-

ing to the verdict.    In such case costs shall not be
allowed to either party, and the claimant shall not pro-
ceed in the land office, or be entitled to a patent for the
ground in controversy, untll he shall have perfected his
title."

It will be observed that, until plaintiff below estab-
lished *title to the ground in controversy*, he could not re-
cover a verdict or judgment.   And this remark is equally
true of defendant below, who was the applicant for pat-
ent.    Thus, it becomes important to ascertain the mean-
ing of the statutory phrase, "title to the ground in
controversy."    A more specific statement of the exact
question presented would be: Can a recovery, in actions
brought to support adverse proceedings, be maintained
by proof of occupancy merely of the premises in dispute;
or must either party, before he can secure judgment,
show a compliance with the statutes, state and federal,
and also miners' rules and regulations in force, relating
to the *location* of mining claims upon the public domain?

A careful examination of sections 2322, 2324, 2325,
R. S. U. S., in connection with other provisions in
the act of congress on the subject of lode claims, leads
us to adopt the second of the foregoing views.    A fair
construction of the provisions referred to is that the ap-
plicant for patent must show a compliance with the loca-
tion statutes, rules and regulations aforesaid.    This view
is taken by the United States land office.    Section 31 of
the land office rules, revised and published in 1881,
reads as follows: "Attached to the field-notes so filed
must be the sworn statement of the claimant that he has
the possessory right to the premises therein described, in
virtue of a compliance by himself (and by his grantors,
if he claims by purchase) with the mining rules, regula-
tions and customs of the mining district, state or terri-
tory in which the claim lies, and with the mining laws
of congress; such sworn statement to narrate briefly, but
as clearly as possible, the facts constituting such compli-

ance, the origin of his possession, and the basis of his claim to a patent." Section 32 of the land office rules commands the applicant, in all cases where the mining records are not destroyed by fire or otherwise lost, to file a true and correct copy of his certificate, as shown on the records, attested by the seal of the recorder, or if he have no seal, by his oath. Section 48, relating to the notice filed in the land office by the adverse claimant, requires a statement under oath concerning his location record similar to that provided in section 32 for the applicant.

These and other land office rules clearly show the construction given by the executive department of the general government to the statutes in question.

This view is supported by considerations both of propriety and justice. The citizen is allowed the privilege by the federal government of appropriating a lode or vein which he discovers upon the public domain and of securing the exclusive possession thereof prior to patent. It is very seldom, in the nature of things, that he can actually possess and occupy the full one thousand five hundred feet of the vein allowed him, to say nothing of the additional surface ground which he is permitted to take. Location statutes, rules and regulations are framed for the purpose of enabling him to hold, prior to patent, constructive possession, as against all other persons, of that part of the vein or veins and surface ground which he cannot and does not actually hold *in pedis possessio.* By compliance with the statutes and regulations, and by such compliance alone, can he prevent other miners and prospectors from appropriating those portions of his claim of which he is not in the actual occupancy. *Armstrong v. Lower,* 6 Colo. 582. It is eminently proper that before he shall be permitted to procure from the government a title in fee-simple to the ground which he professes to hold and has held by such constructive possession, he should be required to show his good faith by proving compliance with the statutes and regu-

lations through which alone the constructive possession is given.

Authorities other than the federal statutes themselves need scarcely be cited to establish the proposition that, in order to constitute a valid location, compliance with miners' rules and regulations in force at the time, as well as with statutes on the subject, is essential; but counsel are cited to *Sullivan v. Hense*, 2 Colo. 424, and *Consolidated Republican Mountain Min. Co. v. Lebanon Min. Co. ante*, p. 343.

It was necessary for plaintiffs in this case to establish a compliance with the miners' rules and regulations in force at the time the claims described in the complaint were located. These claims were in Gregory mining district. In 1860 the citizens of Gregory district, "in convention assembled," adopted "An act defining claims, and regulating the title thereto." This act was offered in evidence, and is before us. It was applicable to the locations of plaintiffs. Among other things, it required the locators of lode claims to post stakes, or otherwise indicate upon the surface, the ground or the vein appropriated. Section 6 thereof reads as follows: "Be it further enacted that any claim or claims now held, either by purchase or discovery, if abandoned for ten consecutive days *after being staked off*, shall be forfeited to any person or persons who may take up the same, and work them, and not abandon them as aforesaid." Section 7: "Be it further enacted that no claim shall be regarded as good and valid unless *staked off* with the owner's name, giving the direction, length, width, and date when the same was made; and, when held by a company, the name of each member shall conspicuously appear."

The phrase "staked off," occurring in both of these regulations, evidently refers to marking the boundaries of claims by stakes, or at least to the posting of stakes along the vein or its croppings, so as to indicate to other prospectors the ground intended to be appropriated. It

is hardly possible that this phrase, as thus used, could mean simply the erection of a single stake, containing a notice somewhat similar to that required upon what is now denominated the "discovery stake." But we need not determine exactly what sort of stakes were meant, or the number thereof; for there is in the record before us, from first to last, no proof of any kind whatever concerning the erection of a stake or stakes anywhere upon the claims; nor is there any evidence to show that the boundaries or the vein were in any other way designated. Therefore we must hold that no sufficient location by plaintiffs was proven, and that, under the views above announced, they were not entitled to recover. If, in the opinion of the court, defendants also failed to establish a valid location, the finding in this case should have been that "title to the ground in controversy" was not shown by either party, and judgment should have been entered accordingly.

In view of future proceedings, it is necessary for us to consider another question discussed by counsel. To support an adverse filed under section 2326, R. S. U. S., an action in the nature of ejectment is undoubtedly proper. Some of the rules pertaining to ejectment are, however, modified in the trial of such causes. For instance, no proof by plaintiff of an actual ouster is necessary; and, upon proper showing otherwise, the action may be maintained, even though plaintiff be himself in the actual possession and occupancy of the disputed premises, or even if the premises at the time the suit is commenced be not in the actual possession of any person. Morr. Min. Rights, 184, and cases.

The complaint in the case at bar is defective, and was obnoxious to demurrer. But defendant waived this objection, and filed his answer. Moreover, when plaintiffs asked leave to amend the complaint so as to cure these defects, defendant objected, and upon his objection the application was denied. While this complaint seems to

have been framed upon a mistaken theory in one respect, it yet shows clearly the cause of action which the pleader intended to state. No one can read it and not arrive at the conclusion that the suit was brought under an adverse filed to contest defendant's application for patent to the premises in controversy, and that the purpose of the pleader was to put in issue and try the questions which by section 2326, R. S. U. S., are submitted to courts for adjudication. The amendment sought by plaintiffs, had it been permitted, would not have changed the cause of action. It would simply have produced a more specific statement of the nature of the claim or interest asserted by them. Under the practice in this state, a party is entitled to such relief as his evidence, together with the facts averred in the body of his pleadings, justify. The prayer of a complaint, or the relief demanded therein, is not conclusive as to the nature or extent of the recovery. *Kayser v. Maugham*, 8 Colo. 232; Bliss, Code Pl. § 161.

The fact that plaintiffs asked for a decree, and not for a judgment, therefore, is of no significance. The body of the complaint showed that the actual relief desired was legal in its nature.

Should the cause be retried, plaintiffs may have leave to amend their complaint, if they shall be so advised.

The judgment is reversed.

*Reversed.*