BECKER v. PUGH ET AL.

17   243
o32   289

1. MINING CLAIMS—ADVERSE PROCEEDINGS.—In adverse proceedings to determine the right to a patent to mining property the defendant cannot recover upon the weakness of plaintiff's title; to entitle the defendant to a judgment the evidence must affirmatively show a right to the property in him.

2. FORFEITURE PROCEEDINGS—SERVICE OF MOTION.—Where one co-owner institutes forfeiture proceedings against another, the owner of a conflicting location cannot object that the service of notice of the forfeiture proceedings with reference to a claim in which he is in no way interested as owner thereof, was not in proper form— *Quære?*   May one co-owner of a mining claim recover for all in adverse proceedings ?

*Appeal from District Court of Gilpin County.*

ADVERSE proceedings to determine the title to mining property.

Mr. L. C. ROCKWELL, for appellant.

Messrs. TELLER & ORAHOOD, for appellees.

HAYT, C. J., delivered the opinion of the court.

This case has been tried three times.   Three juries have decided that appellees, Ulysses Pugh, *et al.*, plaintiffs below, have a right to the mining property in controversy.   And upon each of these verdicts the court entered judgment awarding them the property.   The first of these judgments was reversed by this court.   *Becker v. Pugh,* 9 Colo. 589.

The second was set aside and a new trial granted under the statute, upon appellant paying the costs. This appeal is taken from the third judgment.

If appellant, Becker, had any title to the ground in controversy, it would seem that he ought to have established such title upon the last trial. That he did not do so is admitted by this counsel. In his abstract of record he says that: "Inasmuch as the defendant does not claim he would be entitled to the verdict on the testimony, the balance of the testimony in the record, so far as the defendant's case is concerned, is not abstracted." The evidence introduced is not only insufficient to show a right of recovery in appellant, Becker, when considered by itself, but, if viewed in connection with the evidence offered and rejected, the result is the same. Under these circumstances he may protest against the issuance of a patent to appellees, but his right to contest under the United States statutes may well be doubted.

The act of congress, providing for the trial in the courts for this and similar cases, provides, in case neither party establishes title to the premises in controversy, the jury shall so find and judgment shall be entered accordingly. Under this act it is clear that neither party is entitled to a verdict or judgment, unless his title to the ground in controversy be established. *Becker v. Pugh, supra.* We will therefore examine the record and evidence for the purpose of ascertaining whether or not appellees have shown sufficient title to the premises in controversy to enable them to procure a patent therefor from the government.

The judgment was reversed upon the former appeal, because there was no proof concerning the erection of stakes anywhere on the claim. This proof was supplied on the last trial by the testimony of Mr. Orahood. This witness testified that he was on the ground with Mr. Pugh, one of the locators of the claim, as early as the month of April, 1862. He says that the vein had then been struck and that the shaft was down from ten to fifteen feet, and that afterwards it was sunk to the depth of twenty or thirty feet, and

that still later the lode was worked by an open cut or adit running in on the vein. The witness further testifying says, that at the discovery shaft there was a sign or notice made from a piece of a fruit box with the name of the lode, the name of the locators and the date of the discovery; at the westerly end there was a stake that was supposed to be on the vein, and also one at the east end. The witness also testifies that at the time mentioned he saw other stakes upon the property, but whether they were Mr. Pugh's stakes or whether put there by him or not, witness was unable to state. He says that the stakes were such as were generally used in those days for claim stakes.

We think, under the circumstances, this testimony is sufficient to show that the claim was then properly staked. It is to be remembered that the witness was testifying from recollection of matters that occurred twenty-six years before. After such a lapse of time more definite testimony than this should certainly not be required. The instances would indeed be rare where, after the lapse of a quarter of a century the proof of the original location could be made more fully than was done in this case. In addition to the staking of the claim and the sinking of the discovery shaft, which disclosed a well defined vein of mineral bearing quartz, the evidence shows that a location certificate was duly filed and recorded, and that more than the annual labor upon this claim was performed each and every year thereafter. At the time of the location of this claim there was no statute such as we have at present, fixing the manner in which claims should be staked. This was left entirely to the local custom and rules of miners in the particular district.

As first located there were three claims, each 100 feet in lineal measurement along the vein. This entire territory was, however, included in the one location certificate filed, and was subsequently added to the original location. After this was done and in 1878 the 300 feet claimed was surveyed, and an amended location certificate filed. At the time of this survey six substantial posts were set to mark

the boundaries of the claim, one at each corner and one at the center of each side line, and a new discovery sign was made and posted. Still later there was another survey made, and in pursuance of this survey, a second amended or relocation certificate filed upon April 15, 1885. The amended and the original certificate recorded in 1862 all describe the same property except that the last amended certificate includes fifty feet of additional territory on the west end of the claim.

Counsel contend that each of these amended location certificates is insufficient under the law. The particular defect or defects relied upon are not, however, pointed out. The first location certificate was filed for record long before the act, now to be found upon our statute books, was passed. It may be admitted that tested by this act this location certificate when considered alone is imperfect. It is not, however, necessary to determine whether or not such location certificate was a sufficient compliance with the law as it then stood. The subsequent certificates contained everything required under the act of 1874, and the record of plaintiffs' claim must be held sufficient. *McGinnis v. Egbert*, 8 Colo. 41.

The appellants in this case contend that appellees had no right to include the additional fifty feet in the third location certificate filed, and that they show no title to such additional ground. This claim is based upon the assumption that in order to obtain any right to the fifty feet it was necessary for them to sink the original discovered shaft ten feet deeper, or to sink a new discovered shaft and fix new boundaries in the same manner as if it had been an entirely new location. We do not understand this to be the law applicable to cases of this kind. Here the locator was not endeavoring to make a new location of an old claim, but was simply desirous of changing his boundaries so as to take in additional territory. This he had a right to do under § 2409 of the Gen. Stats.

The appellant claims that the trial court committed error

in several of the instructions given to the jury, but has not, however, deemed this matter of sufficient importance to print such instructions in the abstract of record. We have carefully examined the instructions as they appear in the transcript, and find the same to be correct in all substantial particulars. Appellants requested the court to instruct the jury, "that plaintiffs should prove their case by a fair preponderance of evidence, but if it was equally balanced as to who should recover, the defendant was entitled to this verdict." This instruction is in direct conflict with the act of congress under which the case was tried, and for this reason it was properly refused. If the plaintiffs had offered no proof whatever the defendant was not entitled to a verdict, unless he introduced evidence affirmatively establishing the title.

The last objection argued by counsel brings in review the ruling of the court in admitting a certain notice of forfeiture, under which proceedings plaintiffs claim to have obtained the interest of co-owner in the property under § 2324 of the Rev. Stats. of the United States. The claim being that the statute provides two modes of service, one personal and the other constructive; the latter only to be resorted to in case personal service could not be had. When proof of the publication of notice in this case was offered, appellants objected for the reason that the evidence offered was inadmissible, unless it be first shown that Evans, the co-owner, advertised but did not live in Gilpin county. We do not think appellants are in a position to raise this objection. If the service was insufficient Evans alone can complain of such insufficiency, and he is not before the court. As to whether or not one co-owner may recover for all, is a question that has not been raised, and hence no opinion thereon will be intimated.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*