## UNITED STATES v. PORTER.
### No. 6333.

Circuit Court of Appeals, Seventh Circuit.
April 6, 1938.

Rehearing Denied May 6, 1938.

Michael L. Igoe, U. S. Atty., Warren Canaday, First Ass't. U. S. Atty., and A. Bradley Eben, all of Chicago, Ill., for plaintiff-appellee.

James C. Leaton, of Chicago, Ill., for defendant-appellant.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

The fraudulent scheme which the evidence tended to establish covered the use of corporations known as the Wall St. Security Corporation, the Wall St. Trust of New York, and the Tri-State Investors Corporation. Defendant was the president and dominating figure from 1931 to 1935 of all three companies, which were, or represented themselves to be, dealers in investment securities. They functioned by employing out of town salesmen and agents who obtained cash or securities from investors under a promise to pay interest at the rate of from six to twelve per cent. per annum and to return the principal at any time upon ten to fifteen days' notice by the investors.

They also agreed to pay the normal dividend and interest accruing upon the stocks and bonds deposited. It was represented to the investor that the securities so deposited would be used as collateral by the defendant and his companies, who in turn would trade in the stock market. These companies represented and agreed that the exact securities deposited by the investor would be returned upon demand; that the companies had deposited in escrow more than $1,250,000 of securities with two banks in Chicago and said escrow was to protect the investors against loss; that the defendant's companies had two dollars in assets for every dollar of liability; that the Chicago Federation of Labor had invested with the defendant's companies large sums and had withdrawn $631,000 by reason of these investments. The Government proved the statements to be grossly false. Some two million dollars' worth of securities or cash were received from investors living in Michigan and Illinois, who lost in excess of one million dollars by reason of their delivering their cash and securities to the aforementioned companies. The evidence bearing upon the scheme to defraud was such that it is unnecessary to discuss it in detail or at length. Defendant's counsel in his statement of facts, preceding his argument says:

"The Government * * * introduced evidence to prove the following facts: * * *

"That under this plan approximately $2,-000,000, largely in securities, but some of it in cash, was received from investors living for the most part in the states of Michigan and Illinois; that in addition to promises of large dividends and safety of principal, a false financial statement was employed to obtain these investments, and that losses resulted to individuals up to sixty-five per cent of their investment, with a total loss to all investors of an amount in excess of $1,000,-000."

The jury was justified in finding the existence of a scheme to defraud as alleged in each count of the indictment and that defendant played a leading role in the scheme.

The serious controversy, as disclosed in the oral argument, was over the sufficiency of the evidence to establish the mailing of an envelope which contained a certificate of guaranty of delivery of stock, as set forth in count 17.

For reasons best known to itself the jury found the defendant not guilty upon all the other counts upon which there was little or no substantial dispute as to the mailing.

The evidence which tended to establish the mailing of the envelope containing the certificate of the Wall St. Trust of New York was somewhat equivocal. It was not denied by the defendant who relied upon the weakness of the Government's proof rather than upon the nonexistence or disproof of an essential fact.

A witness, Abs by name, testified:

"This certificate was sent to me through the mail."

Another witness, a former sales manager of one of defendant's companies, testified:

"It was mailed either to the General Service Corporation or to all of its customers."

Abs was a customer.

Defendant's testimony was to the effect that the certificate in question was a certificate addressed to the General Service Corporation and was being held by it and was not mailed to anyone else; that there was no occasion for Abs to get this document and that the custom indicated that it would not be sent through the mails to the customer.

The substance of defendant's argument is that the Government had, through error, set forth the wrong documents in count 17, or that count 17 should have charged a mailing of the document set forth, to General Service Corporation at Kankakee, Illinois, instead of to Abs at Kempton, Illinois.

The District Court considered the evidence and rejected this argument for the reason that Abs testified positively to the

receipt of the letter containing the certificate. The most we can say for defendant's urge is that there was conflict in the evidence. This conflict necessitated the submission of the fact issue to the jury, and its verdict was conclusive with the court.

■ Nor are we impressed by defendant's contention that the evidence of the loss of a document was not sufficiently established to justify the introduction of secondary evidence. Undoubtedly, the original document had gone astray. At the time of the trial it seemed as though it were lost. A witness testified that the last time he saw it was when it was before the grand jury.

We are not convinced from the record before us that there was error in receiving the copy of the document in place of the original.

■■ In passing we feel justified in making the observation that although the certificate to the bill of exceptions states that all the evidence is set forth, this cannot be accepted by us when it appears affirmatively that all the material evidence is not in the bill of exceptions. In the record before us it appears that defendant was sworn on his own behalf. Yet the bill of exceptions only shows that he was cross-examined and not all of the cross-examination is reported. We commend the effort of counsel to shorten the record. Nevertheless, when error is directed to the insufficiency of the evidence to sustain the verdict, the reviewing court must have sufficient information to understand the contentions of the parties. Defendant's testimony is not reproduced in full and therefore we cannot assume that he denied the correctness of the copy of the document which bore his name. Nor can we assume that he denied the facts upon which fraud is predicated.

■ Defendant's contention that the court erred in denying his motion for a new trial is met by an unbroken line of decisions of the Federal courts to the effect that the action of the court on motion for new trial is not reviewable except for clear abuse of discretion.[1]

■ Defendant finally complains because the court invaded the province of the jury "by compensating an assumed leniency on the part of the jury in acquitting appellant of seventeen counts, by adding to the penalty imposed on the one count on which he was convicted."

We must reject defendant's fact assumption. The maximum penalty permitted by the statute for the violation of the statute as charged in each count of the indictment was five years' imprisonment and one thousand dollars fine. The trial judge, it is true, before imposing sentence made some observations upon the jury's acquittal on the other counts. He said:

"The jury's verdict of course is just another example of their going outside their own province to try to show some mercy and some leniency towards the defendant. That is the way I interpret the verdict. Because the evidence with reference to the defendant's guilt with reference to many of these other counts was as strong or stronger * * * than the count on which they based their conviction. Why they selected count 17 *I do not know.*"

Of course, a court does not *know* why the jury convicts a defendant on one count and acquits him on another where the evidence is almost identical on both counts. Such inconsistencies are not infrequent. They do not affect the conviction on the one count where defendant is found guilty.[2] The court can only speculate if he desires to indulge in such fruitless pastime.

■ It is not the province of the jury to fix the sentence. It is solely for the judge to do that and if he keeps within the limits specified in the statute which defines the offense, the punishment is not by us reviewable. This is what the trial judge did.

In passing it might be observed that there seems to have been no absence of reason in the court's action if it were convinced that the defendant had devised a scheme to defraud and had used the mails in furtherance thereof and had defrauded many gullible investors out of a million dollars.

The judgment is

Affirmed.

---

[1] Corpus Juris Secundum, Appeal and Error, § 1637; American Jurisprudence, Appeal and Error, § 101; Dale v. U. S., 7 Cir., 66 F.2d 666; Lonergan v. U. S., 9 Cir., 88 F.2d 591.

[2] Dunn v. U. S., 284 U.S. 390, 52 S. Ct. 189, 76 L.Ed. 356, 80 A.L.R. 161; Chiaravalloti v. U. S., 7 Cir., 60 F.2d 192; Long v. U. S., 9 Cir., 90 F.2d 482.