LEONA BENNETT, Plaintiff, *v.* ATTILIO NAZZARO and Others, Defendants.

Supreme Court, Clinton County, July 2, 1932.

*O'Connell Brothers,* for the plaintiff.

*Patrick J. Tierney,* for the defendant Frank W. White.

ROGERS, J.   The plaintiff was seriously injured when riding as a passenger in defendant Frank W. White's car, which was being driven by the defendant Attilio Nazzaro. There was sufficient evidence of the driver's negligence and the plaintiff's freedom from contributory negligence to make these issues questions of fact for the jury.   The defendant Frank W. White loaned the automobile to his son, John B. White, for the purpose of taking it with him to the Plattsburg Training Camp, and gave him *carte-blanche* to use the car as if it were his own.   The father delegated to his son the right to do as he pleased with the car, which broad authority included permission from the father to the son to lend the car to his friend, Nazzaro, on the occasion in question.   The plaintiff suffered broken bones, shock, intense pain, lost earnings, impairment of hearing in one ear and permanent facial disfigurement. The verdict is not excessive.

The receipt in evidence of the State of New Jersey certified copy of Frank W. White's application for registration, showing ownership of the car in Frank W. White, and its examination by the jury requires special consideration, because on the back of this application appeared the information that the defendant Frank W. White carried liability insurance, and that on a prior occasion he had had an automobile accident.   It was necessary for the plaintiff to prove ownership in Frank W. White.   Offering in evidence the certified copy of the application was one proper method of adducing that proof.   None of the attorneys knew of the objectionable statements on the back of it.   It was received in evidence without objection. It was taken with the other exhibits by the jury into the jury room

to be examined when deliberating upon the verdict. The plaintiff has presented affidavits of eleven of the jurors in which they say in substance that the statements on the back of the application did not affect their decision as to liability or the amount of their verdict. The defendant's counsel has presented his affidavit in which he states that he was told by one of the jurors that the exhibit was discussed and considered by the jury. Defendant's counsel's affidavit is not competent proof of this fact. " Facts which cannot be sworn to by a juror to impeach his verdict cannot be shown by a third party upon information from the juror." (*Gregory* v. *Bijou Theatre Co.*, 138 App. Div. 590.) Therefore, there is no proof that the jury was improperly affected by the information on the back of the application for registration. If the affidavits of the eleven jurors are considered, the proof is to the contrary. Jurors' affidavits will sometimes be received to sustain a verdict, but should not be received in a case like this where it is claimed that the jury was influenced by improper evidence. It must be assumed here that the information on the back of the registration card had the same effect with this jury that would ordinarily be expected. The Legislature has permitted in the *voir dire* examination of a juror the question regarding ownership of stock, etc., in an insurance company issuing liability policies, which question when repeatedly asked insinuates quite forcibly that the defendant is insured. To-day the uninsured automobile owner is the exception. Most jurors having automobiles carry liability policies. The driver's negligence was clear. Inasmuch as the plaintiff did not have an active duty to maintain an outlook for danger ahead the jury could well find, on the evidence, that she exercised reasonable care for her own protection. The amount of the verdict is conservative. A larger amount would have been justified by the evidence. I do not think that the information on the back of the registration card influenced the jury. Inasmuch as the defendant White was not the driver on the occasion of the accident, the information that he had had a previous accident was harmless.

But, even if it could be said that the information was prejudicial, such showing is not sufficient in itself to upset the verdict. It must also be incompetent. The plaintiff had the right to offer in evidence the registration application to show defendant's ownership. Plaintiff was not bound to call the defendant as a witness, or read his deposition to prove ownership. The ordinary method of establishing ownership is to offer the documentary proof from the Department of Motor Vehicles. If the plaintiff's attorneys had known of the statements on the back of the card it would have been their affirmative duty when offering the card in evidence to call the

court's and their adversaries' attention to the back of the card, and then, of course, only the essential fact of White's ownership would have been given to the jury. Inasmuch as the plaintiff's attorneys did not have such knowledge the mere fact that the card contained some information, which being offered by itself would have been excluded, does not make the receipt of the registration application incompetent. Very often letters, papers and documents are received in evidence which contain certain information which cannot be segregated from them, but which if standing apart would not be received. The certified copy application was competent evidence and the defendant not having discovered and objected to the information on the back thereof cannot now be heard to complain that this competent evidence was examined and considered by the jury.

The following quotation from *Flieg* v. *Levy* (148 App. Div. 781, at p. 783) is in point: " It was incumbent upon the plaintiff to establish the appellant's ownership of the horse. To do this, his mother was called who, after testifying that the appellant came to her house the evening of the day on which the accident happened and had a conversation with her, was asked: ' What did he say and what did you say at that conversation? ' This was objected to as incompetent, immaterial and irrelevant; the objection was overruled and the witness answered: ' He said to me his horse is insured and I should take a physician and the child will be cured, and I shall be paid for it. * * * Did Mr. Levy say anything about the horse? A. That is what he said, " My horse is insured." ' The defendant moved to strike out the answers, the motion was denied and exceptions taken. The question called for proper and competent testimony, to wit, appellant's admission that the horse was his, and was material. It was a statement made by the appellant to the mother of the injured boy, and the fact that in the admission of ownership the appellant also said the horse was insured, does not deprive the plaintiff of the right to the conversation."

The failure to object to incompetent evidence has been construed as a waiver, and when, as here, the evidence admitted is competent, the failure to object is fatal, and this is so notwithstanding no objection was made because the objecting party did not know the contents of the exhibit offered. (*Crane* v. *Powell*, 139 N. Y. 379; *Flora* v. *Carbean*, 38 id. 111; *Ford* v. *Snook*, 205 App. Div. 194.)

The motion to set aside the verdict should be denied. Defendant may have a stay of thirty days and if he appeals sixty days in which to propose a case.