## QUERCIA v. UNITED STATES.

### No. 2898.

Circuit Court of Appeals, First Circuit.

May 18, 1934.

See, also, 62 F.(2d) 746.

Essex S. Abbott, of Boston, Mass. (Joseph V. Carroll, of Boston, Mass., on the brief), for appellant.

Joseph J. Hurley, Asst. U. S. Atty., of Boston, Mass. (Francis J. W. Ford, U. S. Atty., of Boston, Mass., on the brief), for the United States.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

The appellant, Angelo Quercia, was jointly indicted in the District Court of Massachusetts with one Joseph A. Brogna under the so-called Harrison Act (26 USCA §§ 211, 691 et seq.) for the unlawful sale and distribution of narcotics. Brogna pleaded guilty.

Quercia on his first trial was found guilty, but, by reason of a statement of the trial judge in his charge to the jury, the judgment of this court, 62 F.(2d) 746, affirming the judgment of the District Court, was reversed by the Supreme Court, 289 U. S. 466, 53 S. Ct. 698, 77 L. Ed. 1321, and the case was re-

manded to the District Court for further proceedings.

At the September term, 1933, of the District Court, Quercia was again set to the bar to be tried. In the course of the trial a government witness testified that in July or August, 1931, he was investigating the drug traffic in the vicinity of Boston and came in contact with Brogna; that he had bought drugs of him; that later a dispute arose as to the price Brogna was charging the agent for morphine. As a result, Brogna said he would bring Quercia, who was the "main connection," with whom the agent could talk price. Brogna then went to the residence of Quercia and returned, accompanied by Quercia, whom he introduced as "the main connection," to which introduction Quercia made no objection.

The agent testified that he then had a conversation with Quercia and told him the price Brogna was charging him for the drug; that Quercia told him that a physician up in Maine was paying $110 an ounce without objection, but finally agreed that the price to the agent would be $75 an ounce, and that the agent could take it or leave it, and then said: "Give Joe (meaning Brogna) the money," and in the presence of Quercia the agent paid Brogna $225 for three ounces of morphine, which was later delivered to the agent by Brogna.

The agent further testified that during the conversation with Quercia, Quercia said that all future business the agent did with Quercia would have to be done through Brogna; that he did not want to have anything to do with the business. "You do all your business with Joe."

It is not contended by the appellant that the jury was not warranted in finding the appellant guilty of selling and distributing drugs on the day of September 9, 1931, under the first count in the indictment.

The government agent further testified that on September 13, 1931, with another agent, he again went to Brogna's residence and told Brogna that he wanted to buy more morphine. Prior to the admission of this evidence, Quercia's counsel objected to the admission of "anything said out of the defendant's (Quercia's) presence," in reply to which the court said:

"Let us see what we have by way of evidence in the case. We have testimony, haven't we, in substance that Brogna said in Quercia's presence, and that Quercia did not deny it, that Quercia was the principal or the 'main connection.' Is that the way you remember the testimony, Mr. Carroll?

"Mr. Carroll. Yes.

"The Court. We have testimony from this witness as to Quercia stating that in the future the officer's dealings should be with Brogna, and under these circumstances I am compelled to admit the testimony. Your exception may be noted."

It may be well to note that up to this time in the course of the trial no denial had been made by either Brogna or Quercia of the agent's testimony as to what took place between him and Quercia on September 9.

The government agent further testified that on September 13, 1931, when he called on Brogna and said that he wanted to buy more morphine, Brogna went to a certain place in the city of Chelsea where the agent had further talk with Brogna and paid him $160. Brogna then went to Quercia's residence in Somerville and entered, and later came out with Quercia and a man by the name of Patterson. Brogna then returned to the place in Chelsea where the agent paid him the money and delivered to the agent two ounces of morphine.

Brogna was then arrested and taken to the police station. Later the officers visited Quercia's residence and found in a room claimed to be occupied by the man Patterson a quantity of drugs and scales for weighing. At the police station, while the officers were examining money found on the person of Brogna, Quercia voluntarily offered money in his possession for examination. Among the bills offered by Quercia for examination was found a marked $5 bill paid by the government agent to Brogna on September 9.

Brogna and Quercia later testified and denied the statements of the agents as to what took place in the presence of Quercia on September 9, and, as an explanation of Quercia being called in on the question of price, stated that Brogna did not tell Quercia what he was selling, but merely asked him as a favor to tell the person he was dealing with that the price of the article was $80. We think the jury was warranted in accepting the version of the government witnesses as to what took place on September 9 between the agent and Quercia.

Counsel for Quercia contend, however, that the admission of what took place between the agent and Brogna on September 13, but not in the presence of Quercia, was improper and prejudicial to Quercia, relying on the cases which hold that the admissions or statements of one or two codefendants not in

the presence of the other are not admissible against the absent one. Unless there is other evidence of joint action, this is a correct rule; but where there is prior evidence of an agreement to commit, or the joint commission of an offense, the statement of one is evidence against all who are concerned in it, if made in furtherance of the common design. It is not necessary that the indictment be for conspiracy, if a joint enterprise is shown and they are indicted as codefendants. Commonwealth v. Crowninshield, 10 Pick. (Mass.) 497; Commonwealth v. Scott et al., 123 Mass. 222, 232, 236, 25 Am. Rep. 81; Commonwealth v. Harley, 7 Metc. (Mass.) 462; Hitchman Coal & Coke Co. v. Mitchell, 245 U. S. 229, 249, 38 S. Ct. 65, 62 L. Ed. 260, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461; Lincoln v. Claflin, 7 Wall. 132, 139, 19 L. Ed. 106.

By sections 5323, 5427, Rev. St. (18 USCA § 550), "whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal." Under the evidence in this case the jury was warranted in finding that Quercia was a principal, both as to the sale on September 9 and the sale on September 13. Any statements or acts of Brogna on either day, whether in Quercia's presence or not, made in the furtherance of their joint enterprise, were admissible against Quercia. The appellant's exceptions to the admission of the evidence of the acts of Brogna in the absence of Quercia on September 13 are without merit, and the appellant's motion for a directed verdict of not guilty was properly denied.

The appellant, after the verdict of guilty, filed a motion for a new trial on the ground that the indictment handed to the jury, when they retired for their deliberations according to the usual practice, bore the notations of the prior conviction. The fact is admitted, as well as the fact that no objection thereto was raised at the time by counsel for Quercia through oversight, no doubt, as both were familiar with the practice of handing the indictment to the jury on its retirement, and of the clerk's custom of noting on the back thereof the verdict of the jury and the sentence by the court.

The granting of a new trial is within the discretion of the trial judge. The only issue of law involved on appeal is whether he has abused his discretion. The trial judge carefully considered all the circumstances in this case, together with the fact that the jury must have realized, if they saw and read the notation of a prior conviction, that there had

been error committed in the prior trial, and that the appellant was having a new trial.

The trial judge in ruling on the motion for a new trial relied on Holmgren v. United States, 217 U. S. 509, 521, 30 S. Ct. 588, 590, 54 L. Ed. 861, 19 Ann. Cas. 778, in which the Supreme Court in passing on a similar situation said:

"It would be sufficient to say of this objection that it was not taken until a motion was made for a new trial, which motion, with the accompanying affidavits to the effect that the jury had read and considered the indorsements upon the indictment, was considered, and the motion overruled by the trial court. It has been frequently decided that the allowance or refusal of a new trial rests in the sound discretion of the trial court, and its action in that respect cannot be made the basis of review by writ of error to this court."

The court in the above case differentiated it from that of Ogden v. United States (C. C. A.) 112 F. 523.

We think the trial judge properly held that the granting of a new trial was a matter within his discretion, and no abuse of discretion is shown on this record.

The judgment of the District Court is affirmed.