## UNITED STATES v. DRESSLER.
### No. 7171.

Circuit Court of Appeals, Seventh Circuit.
May 28, 1940.

EVANS, Circuit Judge, dissenting.

———◆———

Donald D. Rogers, Sarah S. Sandor, and Michael V. Ostrowski, all of Chicago, Ill., for appellant.

William J. Campbell, and A. Bradley Eben, both of Chicago, Ill., for appellee.

Before EVANS, MAJOR, and TREANOR, Circuit Judges.

TREANOR, Circuit Judge.

Defendant-appellant was prosecuted upon an indictment charging him with kidnaping, seizing and abducting one Billy S. Hamilton in violation of Sections 408a and 408b of Title 18 U.S.C.A. The jury returned a verdict of guilty and the District Court, in accordance with the recommendation of the jury, imposed a sentence of death by electrocution. From the judgment of conviction and sentence the defendant has appealed to this court.

For sometime prior to July 11, 1939, defendant had been confined in the Oklahoma State Penitentiary at McAlister, Oklahoma. On the foregoing date he succeeded in escaping from prison. In the course of his escape he obtained a gun from a prison guard. He compelled one Brown to drive him from McAlister into Missouri and then into Kansas. At his order the driver stopped at a point near Pittsburg, Kansas, where the defendant was picked up by Hamilton. Defendant compelled Hamilton to drive him from place to place until they finally arrived at Maywood, Illinois. On July 14, 1939, de-

fendant and Hamilton parked at a point outside of Ringwood, McHenry County, Illinois. Here they went to sleep in the car, defendant sitting in the driver's seat. According to the defendant's story he had placed the gun under his legs, and during the night was awakened by an effort of Hamilton to remove the gun and escape from the automobile. Defendant's confession stated that Hamilton had seized hold of the barrel of the gun and defendant seized the stock and the gun was discharged and Hamilton was killed. Later the body of Hamilton was found where the defendant had placed it and shortly thereafter defendant was apprehended and returned to the penitentiary in McAlister, Oklahoma.

The act creating the offense with which defendant was charged makes the crime punishable by death "if the verdict of the jury shall so recommend"; and no sentence of death may be imposed by the court without the jury's recommendation.

The grounds for reversal urged here are as follows:

1. The act is unconstitutional.

2. The indictment is void and should have been quashed.

3. Exclusion of material evidence.

4. The jury was permitted to consider improper prejudicial evidence.

■ We shall not re-examine the decision of this Court in Seadlund v. United States.[1] We see no reason for questioning the correctness of that decision which upheld the constitutionality of the act.

■ Defendant urges that the indictment is insufficient to state the offense defined by the act for the reason that the indictment does not allege that he was held "for ransom or reward" and does not allege a holding for any particular purpose within the meaning of the phrase "or otherwise." By the terms of the act the victim must be held "for ransom or reward or otherwise." The indictment alleges that the defendant kidnaped Hamilton for the purpose of holding Hamilton, taking possession and control of his automobile, providing defendant with a means of transportation, aiding defendant to escape from an official of Oklahoma, and taking Hamilton's car by intimidation. In Gooch v. United States[2] it was held that the act ap-

[1] 7 Cir., 97 F.2d 742.

[2] 297 U.S. 124, 56 S.Ct. 395, 80 L.Ed. 522.

plied to the holding of an officer to avoid arrest. We are of the opinion that the indictment sufficiently alleges that the victim was held for a purpose within the meaning of the phrase "or otherwise."

We see no substance in defendant's contention that the indictment was defective for the reason that it alleged the offense to be "against the peace and dignity of the United States", etc., as distinguished from "against the peace and dignity of the United States of America."

Defendant claims that the District Court erred in excluding as evidence certain letters written by defendant's wife to defendant. An examination of the record discloses that the letters were not offered in evidence and hence could not have been excluded by the District Court. We assume from the discussion in defendant's brief and from the oral argument that the purpose of offering the letters was to throw light on the mental condition of the defendant in connection with the claim that he was temporarily insane. But it appears that the foundation laid for the introduction of the letters as exhibits was that the cessation of letters from his wife had had a disturbing effect upon defendant. It does not appear that defendant was seeking to prove by the letters that the contents thereof were such as to disturb his mental condition. Consequently, it would not have been error for the trial court to have excluded the letters even if defendant had made a proper offer.

The only serious question presented for our consideration arises out of the admission in evidence of two cards which carried fingerprints of the defendant. One contention of defendant is that the jury was not qualified to make comparison of fingerprints and that only testimony of experts should have been relied upon. It is unquestioned that the fingerprints on the cards were the fingerprints of the defendant, and the prosecution produced experts who testified that certain fingerprints found on Hamilton's automobile were the same as the fingerprints on the cards. The cards were passed to the jury, and the members were permitted to inspect the fingerprints. We do not think that it was error to allow the members of the jury to compare alleged fingerprints of the defendant with fingerprints which are admittedly fingerprints of the defendant after experts have compared them in the presence of the jury and have testified that they correspond.

But a most serious problem was created by reason of the fact that on the backs of the fingerprint cards there was prejudicial information in the form of the "criminal history" of defendant which was obviously incompetent as evidence and which could not have been introduced as such.

The exhibits in question, Government exhibits 49 and 51, were identified and offered solely as fingerprints; and were admitted in evidence as fingerprints. Defendant objected to the introduction of the exhibits but it is not clear that the objection was directed to the matter on the reverse sides of the cards. The Government contends (1) that there was no objection and, consequently, that no question in respect thereto was saved; and (2) that the information was not prejudicial.

We agree with the Government that the record does not show any objection to the exhibits except in respect to their character as fingerprint exhibits. But the facts are such that we are of the opinion that we must consider defendant's contention. Government counsel, during oral argument, stated that at the time of the offering of the exhibits he was unaware of the presence of the matter on the reverse sides of the cards and that if he had known of it he would not have offered the exhibits in evidence. It is not questioned that defendant's counsel and the trial judge were ignorant of the existence of any matter on the reverse sides of the cards.

In general, it is the duty of counsel to examine proffered exhibits for the purpose of informing himself of the contents and nature of the exhibits. But in the instant case defendant's counsel justifiably assumed that the exhibits were what they appeared to be, and what the Government counsel stated them to be,—merely cards carrying fingerprints of the defendant. The Government must assume responsibility for the mistake since the exhibits were offered by the Government, had been in the custody and actual possession of the Government and, as between the defendant and the Government, the Government must be charged with knowledge of the presence of the "criminal history" on the reverse sides of the exhibits. And in fairness to Government counsel it should be said that he assumed responsibility for overlooking the "criminal history."

The exhibits were sent to the jury room with the jury for use in its deliberations and without any knowledge on the part of the jury that the "criminal history" was improperly before it. Apparently neither Government counsel nor counsel for defendant discovered the fact that the cards carried the prejudicial matter until after the jury had returned its verdict. But following the verdict and before pronouncement of judgment defendant filed a motion to have the verdict set aside and a new trial granted.

In United States v. Atkinson[3] it was stated: "In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings."

In this case the defendant called the District Court's attention to the unfortunate situation as soon as he acquired knowledge of it; and on appeal has presented the question to us.

In his motion for a new trial the defendant urged upon the court, as grounds for setting aside the verdict, that he had been denied a fair and impartial trial and had been substantially prejudiced by reason of the fact that the fingerprint exhibits had brought to the attention of the jury "incompetent, irrelevant, immaterial, prejudicial and inflammatory statements indicating that the defendant had been arrested for, but not convicted of, the offense of rape and other offenses"; and defendant further urged that "evidence of such arrests was wholly and utterly incompetent and gravely prejudicial; and that the said informal memoranda did not, in any event, constitute competent or proper evidence even of the fact of such supposed arrests, but amounted to mere hearsay statements as to the purported facts recited."

The generally accepted rule that a denial of a motion for a new trial is not assignable as error on appeal has been qualified by the statement, and holding, that the ruling will not be disturbed unless it appears that there was an abuse of discretion. This Court approved such limitations in United States v. Porter;[4] and in Starr v. Superheater Co.[5] held that the verdict should have been set aside and that there was an abuse of discretion in not granting a motion for a new trial in that case. We think such limitation is recognized by the Supreme Court in Fairmont Glass Works v. Cub Fork Coal Co.[6]

The fingerprint card, Government exhibit 51, was prepared after the arrest of the defendant in connection with the instant case. It bears a recording date of August 21, 1939. The face of the card is devoted to the fingerprints of defendant. On the back of exhibit 51 is pasted a photograph showing a profile and front view of a man. The front view includes in bold relief a card placed on the chest of the subject, the card carrying the inscription "Cook County Jail 12516". The lower half of the back of the card carries the heading "Criminal History"; and under a subheading "City or Institution" is written "McAlester, Okla."; and under another subheading, "Charge", is written "Robbery", and under "Disposition or Sentence" is written "10-yrs."

Fingerprint card, Government exhibit 49, bears a recording date of January 24, 1938. The face of the card carries fingerprints while the reverse side gives what purports to be the criminal history of defendant. The space for photograph is blank. To the right of the blank space appears the following matter: "Date of Arrest—January 18-37; Charge—Dyer Act; Disposition of case—pending." The lower half of the reverse side of the card carries the following information under the heading "Criminal History," the items appearing in red typewritten letters:

"As Oliver Lawrence Dressler, with aliases, No. 15932 USM, Chicago, Ill. arrested PD, Chicago, 12-28-37; charge rape; dism. for want of prosecution 1-18-38; Arres. Chicago, 1-18-38 charge Unlawful F. to A.P. in St. of Okla. turned over to USM, Tulsa, Okla. (Inf. rec FBI-Chicago, Ill. 3-28-38) RMH (Bu. file No. 88-458-5) (ident FBI- No. 1441816)"

Apparently there is an established practice of the Investigation Bureau of the Department of Justice to place fingerprint reproductions on one side of the card and its own statement of the criminal history of the person on the reverse side. In view

3 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555.

4 7 Cir., 96 F.2d 773, 775.

5 7 Cir., 102 F.2d 170, 176.

6 287 U.S. 474, 53 S.Ct. 252, 77 L.Ed. 439.

of the frequent use of fingerprints in evidence it would seem that special precaution should be taken to prevent the criminal history of the person, whose fingerprints appear on the card, from coming to the attention of the jury. An Arizona court attempted to solve the problem by admitting a fingerprint card in evidence on the condition that the written part be "covered in such manner as to render the printing thereon invisible." The Arizona Supreme Court held that this was not error since, as a result of the Court's order, the jury never saw the printed matter on the card and had no knowledge thereof.[7] At any rate courts cannot annul the well established and sound rule of excluding incompetent and prejudicial information regarding former offenses of a defendant merely to facilitate the use of fingerprint evidence.

Government's exhibit 49 carried fingerprints of the defendant which had been taken more than a year before defendant's arrest in connection with the offense charged in the instant prosecution. We are at a loss to understand why it was offered in evidence since the fingerprints of defendant on Government exhibit 51 had been taken after his arrest in connection with the present case and furnished sufficient basis of comparison with the fingerprints which were found on parts of the automobile. The only evidentiary contribution made by Government exhibit 49, over that made by Government exhibit 51, was the criminal history of the defendant, including the especially prejudicial information that he had been arrested on the charge of rape.

The net result of the jury's having access to the criminal history of defendant was that the jury was informed that the defendant had been convicted of the crime of robbery and had been sentenced to imprisonment for a term of ten years; that he had been arrested on the charge of violating the Dyer Act, 18 U.S.C.A. § 408; that he had been arrested on the charge of rape and on some other charge designated as "Unlawful F. to A.P. in St. of Okla." The jury also learned that there was a criminal record on file in the U. S. Bureau of Investigation, Department of Justice. The foregoing information was before the jury during their deliberations in the jury room without any instruction or direction by the court, and we are not free to conjecture that the members of the jury were conscious of any limitations or restrictions upon their use of it.

It is not questioned by the government that the information conveyed to the jury under the heading "Criminal History" on each card was inadmissible and should not have been permitted to go to the jury. The Government does contend, however, that the cause of defendant was not prejudiced by the consideration of such information by the jury.

It is inconsistent with our traditional conception of a fair trial to permit any information to go to a jury which might influence the jury to convict a defendant for any reason other than that he is guilty of the specific offense with which he is charged. In harmony with the foregoing, courts have excluded evidence of, or references to, prior offenses of a defendant. In Boyd v. United States[8] the defendant was tried and convicted of murder. It appeared in evidence that the killing followed an attempt to rob. The trial court admitted over objection evidence tending to show that the defendant had committed other robberies in that neighborhood shortly before the killing took place. The Supreme Court was inclined to the view that the judgment should not be disturbed if the evidence of other robberies had been limited to a certain two. But the Supreme Court was of the opinion that evidence of three other robberies was inadmissible and prejudicial. The following excerpt from the opinion of the Supreme Court reveals the danger of permitting evidence of prior crimes to go to the jury: "Proof of them only tended to prejudice the defendants with the jurors, to draw their minds away from the real issue, and to produce the impression that they were wretches whose lives were of no value to the community, and who were not entitled to the full benefit of the rules prescribed by law for the trial of human beings charged with crime involving the punishment of death. Upon a careful scrutiny of the record we are constrained to hold that, in at least the particulars to which we have adverted, those rules were not observed at the trial below. However depraved in character, and however full of crime their past lives

---

[7] Moon v. State, 22 Ariz. 418, 198 P. 288, 292, 16 A.L.R. 362.

[8] 142 U.S. 450, 458, 12 S.Ct. 292, 295, 35 L.Ed. 1077.

may have been, the defendants were entitled to be tried upon competent evidence, and only for the offense charged."

The Government urges that this Court must assume that there was no prejudice since the defendant makes no affirmative showing that the jury was influenced adversely to defendant's cause. But the rule followed is not in harmony with the foregoing. In Little v. United States[9] the following statement of the court makes the governing rule clear: "* * * where error occurs which, within the range of a reasonable possibility, may have affected the verdict of a jury, appellant is not required to explore the minds of the jurors in an effort to prove that it did in fact influence their verdict. * * * The record failing affirmatively to disclose that no prejudice did result, the verdict cannot stand."

In Vicksburg & Meridian Railroad Co. v. O'Brien[10] the Supreme Court expressed the same idea: "While this court will not disturb a judgment for an error that did not operate to the substantial injury of the party against whom it was committed, it is well settled that a reversal will be directed unless it appears, beyond doubt, that the error complained of did not and could not have prejudiced the rights of the party."

And the Supreme Court repeated the substance of the foregoing in McCandless v. United States[11] when it stated that it was a "well-settled rule that an erroneous ruling which relates to the substantial rights of a party is ground for reversal unless it affirmatively appears from the whole record that it was not prejudicial."

The situation in the instant case comes within the force of the foregoing statements. The record discloses that the highly prejudicial information was sent to the jury room as a physical part of exhibits 49 and 51 which exhibits were for the use of the jury during its deliberations; and Government counsel and defendant's counsel assumed in their briefs and at the hearing before this Court, that the matter contained in the "criminal history" of defendant came to the attention of the jurors and was considered by them; and it was not questioned that the exhibits carrying the

improper information went to the jury room with the jury in the usual manner along with other exhibits. Defendant makes a showing of prejudice to his substantial rights when he shows to this Court that the "criminal history" of the defendant was sent to the jury room for consideration by the jury.

In Ogden v. United States[12] the defendant supported his motion for a new trial by an affidavit by jurors which recited that the jury, upon retiring to deliberate upon and to find a verdict, took to the jury room two indictments, upon which the defendant had been found guilty on a former trial, and also recited that the indictments contained a notation of the former convictions. The District Court refused to consider the affidavit. The Circuit Court of Appeals held that this was error and stated that "the effect of bringing the fact of such former conviction prominently and authoritatively to the attention of the jurors could not but be prejudicial to the defendant below." Counsel for the Government contended that it was "not shown by the depositions taken that the indorsements on the indictments were read by any of the jurors." The Circuit Court of Appeals disposed of this contention in the following language: "The fact that papers with such indorsements upon them were handed to the foreman of the jury, presumably by authority, along with other papers, by an officer of the court, could hardly fail to give to the jury the impression that they were intended for their consideration, and that they were expected to have some weight in forming their verdict. We do not think it was necessary on the part of the defendant below to show that such indorsements had been read by the jurors or any of them. It was a gross violation of the rights of the defendant below that they should have been handed to them at all in the manner in which they were. * * * It was not necessary, therefore, in our opinion, that the defendant below should have gone further than he did, when he showed the presence in the jury room of the indictments with the obnoxious indorsements, and the circumstances under which they came into the possession of the jury."

In connection with the foregoing the Circuit Court of Appeals stated that it

---

[9] 10 Cir., 73 F.2d 861, 866, 96 A.L.R. 889.

[10] 119 U.S. 99, 103, 7 S.Ct. 118, 120, 30 L.Ed. 299.

[11] 298 U.S. 342, 347, 56 S.Ct. 764, 766, 80 L.Ed. 1205.

[12] 3 Cir., 112 F. 523, 526.

need not consider whether proof that these indorsements "were not read by any of the jury" would have caused the court to reach a different conclusion; but the court added that, in any event, the burden was upon the Government to produce the proof that the indorsements had not been read, and that the presumption that their presence in the jury room, under the circumstances, was injurious to the defendant remained "until rebutted by evidence on the part of the plaintiff below." The court, however, indicated that in its opinion the rule against permitting jurors to impeach their own verdict would be transgressed by requiring an "aggrieved party to a suit, to not only show that obnoxious and prohibited documents or other evidence were in the possession of the jury, but that the jurors had actually availed themselves of the opportunity thus presented to them by reading or discussing the same."

 We believe that under the decisions of the Supreme Court of the United States it is not permissible for affidavits or testimony of jurors to be received by a trial court in support of a motion for a new trial for the purpose of showing that the jurors did, or did not, consider documentary or other information which was made available to them in the jury room, as a part of record exhibits, in the regular course of the trial proceedings. Such a practice would not be different in principle from permitting jurors to testify, for purposes of a hearing on a motion for a new trial, that they had not understood or had not paid any attention to an erroneous instruction; or that they had not considered illegal evidence which had been admitted by the trial court over objection of the aggrieved party. The Supreme Court in McDonald v. Pless[13] held that jurors could not testify to their misconduct in respect to the method of arriving at a verdict. The foregoing is not in conflict with various holdings of federal courts to the effect that an aggrieved party may utilize affidavits or testimony of jurors in support of his motion for a new trial to show that extraneous matters or influences have been introduced into the jury room,—in short, to show that there has been tampering with the jury.[14] But the right to utilize such affidavits or testimony does not depend upon a showing that the extraneous matters were actually considered by the jurors. If the nature of extraneous information or influence, which is introduced into the presence of the jury, is such that it would be prejudicial if acted upon, the aggrieved party is not required to disclose by the affidavit or testimony that the jurors actually considered it. But it may happen that the disclosure of the method of introducing the extraneous matter into the jury room will also disclose that one or more jurors had actual knowledge of the matter. See Mattox v. United States, supra.

In the instant case there was no reason for an affidavit to show that the improper matter went to the jury room, since it is clear from the record, and not questioned by the Government, that the "criminal history" was a physical part of Government's exhibits 49 and 51, which were sent to the jury room to be considered by the jury.

The decisive question for this Court is whether we can say that it affirmatively appears from the whole record that the submission to the jury of the improper information was not prejudicial to the defendant's cause; and the special function of the jury in this type of case is of utmost significance in answering this question. As already pointed out, the death penalty could not have been imposed in the absence of the recommendation by the jury. The statute provides that upon conviction the accused shall be punished "by death if the verdict of the jury shall so recommend, provided that the sentence of death shall not be imposed by the court if, prior to its imposition, the kidnaped person has been liberated unharmed * * *." The act also provides that "if the death penalty shall not apply nor be imposed the convicted person shall be punished by imprisonment in the penitentiary for such term of years as the court in its discretion shall determine."

 If the only question before the jury had been that of guilt or innocence, we believe that the defendant's confession and his own testimony on the witness stand were sufficient to render harmless the consideration of the information furnished by the "criminal history." The confession and testimony of defendant constituted a detailed statement of what amounted to a plea of guilty to the charge of kidnaping. Obviously, it would be an irrational conclusion to assume that the jury was influenced

---

[13] 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300.

[14] Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917.

to any extent in finding the defendant guilty by the "criminal history" when the defendant had frankly admitted the commission of all the acts which constituted guilt under the kidnaping statute. But different considerations are involved in appraising the effect of the "criminal history" upon the minds of the jurors while they were engaged in deciding whether the death penalty should be recommended. The decision of that question called for an exercise of discretion and an evaluation of any mitigating circumstances. It was the duty of the jury to determine whether the defendant, in view of all the circumstances surrounding the commission of the crime, merited the death penalty. In respect to the issue of guilt or innocence of the defendant the jury was bound by strict law to return a verdict of guilty if it found that the defendant had committed certain acts; while in exercising its privilege of recommending imposition of the death penalty the jury was not bound by strict rules of law but acted on its appraisal of the character of the conduct of the defendant as evidenced by his acts which were related to the commission of the crime with which he was charged. Under the law, as applied to the admitted facts of this case, the jury lawfully could recommend the death penalty. But under the provisions of the statute the jury could refuse to recommend the death penalty and leave the punishment to the discretion of the trial court; but in the absence of a recommendation by the jury the trial court could not impose a greater penalty than life imprisonment. In short, it was within the discretion of the jury to decide whether there were mitigating circumstances which would justify limiting the punishment to not more than life imprisonment.

A careful reading of the confession of defendant impresses us that members of the jury reasonably could have believed that defendant's victim came to his death in the manner described by defendant; and if the jury had been convinced that the defendant had no actual intention of killing his victim, and that the victim's death was the result of an unintentional discharge of the gun in the struggle between the defendant and his victim, we cannot say that the jury would have acted unreasonably if it had left the question of the extent of the penalty to the trial judge who, under the law, could have imposed a term of life imprisonment or any lesser term. There was testimony by defendant and other witnesses of facts relating to the defendant's conduct which might have had some mitigating influence, depending upon the jury's appraisal of the testimony and of the significance of the facts. Regardless of our personal appraisal, we cannot say that the jury would have acted unreasonably if it had found in these facts some mitigating circumstances. And we cannot assume that the jury treated lightly a penalty of life imprisonment or minimized the extreme seriousness of recommending the death penalty.

Under the law the jury was permitted to consider only the evidence relating to the crime with which defendant was charged. But in addition to such permissible evidence, the jury had before it, without limitation on its use, information which strongly indicated that the defendant was a hardened, habitual criminal. It is difficult to believe that a juror with such a mental picture of defendant would not have been influenced thereby in his effort to appraise the defendant's story of the manner in which Hamilton met his death. If the "criminal history" made any impression whatever upon the individual jurors, such impression must have been unfavorable to defendant's cause. And the probability that such information did substantially influence the jury is increased by the fact that the jury must have assumed that it was perfectly proper for it to give weight to the "criminal history" of the defendant in deciding whether to recommend the death penalty.

We do not find anything in the record which reasonably can be said to mitigate any prejudicial effect which might have been occasioned by the jury's consideration of the "criminal history." It is possible that one of the convictions which is listed in the "criminal history" is the conviction under which the defendant was serving a sentence at the time of his escape from prison, and in respect to which he testified as a witness, yet there is nothing in the recitals of the "criminal history" which shows this to be true. The offense which might be the same is "robbery"; but the notation does not reveal the date of trial, nor the beginning nor ending of the term of sentence. The jury had no way of knowing that the term of imprisonment had not expired long before the beginning of

the term of imprisonment which the defendant was serving at the time of his escape from prison.

The Government suggests in its brief that any prejudicial effect of the recital that the defendant had been arrested on the charge of rape was cured by the further notation that the charge was dismissed for want of prosecution. It must remain, of course, a matter of speculation as to the extent the jury was influenced by learning that defendant had been charged with the crime of rape, or to what extent any prejudicial reaction was cured by reason of the statement that the charge had been dismissed for want of prosecution. No explanation was available to the jurors for the failure to prosecute. The want of prosecution might have been due to the unwillingness of the prosecuting witness to appear as a witness, or to any one of several reasons, which were unrelated to the question of defendant's innocence. In view of the fact that the charge of rape was only one of several crimes enumerated in the "criminal history" it would be idle for us to speculate on the degree of mitigation of prejudice that could be attributed to the notation that the charge of rape was dismissed for want of prosecution.

■■ The defendant, both in his confession and in his testimony before the jury, described several offenses committed by him during the course of his flight from prison and up to the time of the death of Hamilton. But the fact that there is before a jury legitimate evidence of the commission of offenses by the defendant other than the one for which he is on trial, ordinarily, would increase the chance of prejudice to the cause of the defendant from permitting illegitimate evidence of still other crimes to go to the jury. Furthermore, reviewing courts frequently have emphasized the duty of trial courts to exercise special caution to keep from the minds of jurors extraneous influences during the trial of a defendant who is charged with a crime which is particularly shocking. It was such situations that drew from the Supreme Court the warning in Boyd v. United States, supra, that proof of other offenses only tended to prejudice a defendant with the jurors, "to draw their minds away from the real issue, and to produce the impression that they were wretches whose lives were of no value to the community"; and further to impress upon the jurors that such defendants "were not en-

titled to the full benefit of the rules prescribed by law for the trial of human beings charged with crime involving the punishment of death." The further statement of the Supreme Court in the Boyd case is especially applicable to the situation in the present case: "However depraved in character, and however full of crime their past lives may have been, the defendants were entitled to be tried upon competent evidence, and only for the offense charged."

On the basis of the record before us, it is impossible to say that the jury was not substantially influenced by the information which was improperly before it in arriving at its conclusion to recommend the death penalty. We conclude that the District Court should have set aside the verdict and granted a new trial.

The judgment is reversed.

EVANS, Circuit Judge (dissenting).

Defendant bases his request for a new trial on the argument that incompetent evidence affected the jury's recommendation of the death penalty. Disposition of his plea turns upon the correct answer to two questions: Did such evidence reach the jury? Was it prejudicial?

In considering the first question it is significant (a) that no adverse or erroneous ruling of the court admitted this evidence, and (b) satisfactory proof that it reached the jury or affected its deliberations is lacking.

What was the objectionable evidence? How (assuming it reached the jury) did such evidence reach them?

Fingerprints on the Hamilton car were photographed; likewise, defendant's fingerprints. Both were received in evidence,—properly, although over objection. They constituted a link in the identification proof. On the back of each was a typewritten *statement*. These statements were *not* received in evidence. Their existence escaped the notice of defendant's counsel. Later the court, not being advised of any words on the reverse side of the exhibits, permitted the exhibits to go to the jury room. It is fair to say they *may* have been read by the jurors, but also there is no competent proof to show they *were* read by any of the jurors.

What were the statements? One stated that defendant had been convicted of a robbery charge and was serving a sentence in the Oklahoma penitentiary. This was,

however, a harmless statement, in view of defendant's own testimony that he had been convicted of robbery with a gun and was serving his sentence when he escaped. This fact he related in his confession, and repeated it on the witness stand. It was undisputed. There could therefore have been no harm in the statement of a fact which was thus admitted.

The other statement (the sole support for the reversal here) was on the back of the other exhibit. It stated that defendant had been arrested—"charge rape; *dism. for want of prosecution.*"

It is my conviction that the court properly denied the motion for a new trial for several good reasons.

(a) It is significant that no error was committed by the court nor was the jury guilty of misconduct during this trial. It was the failure of defendant's counsel to note the writing on the back of the exhibit and to call it to the court's attention, that furnishes the groundwork for the new trial motion.

While we must be steadfastly determined to see that conviction is not based on incompetent or improper evidence or upon extraneous facts, it must also be appreciated that in the trial of all cases, civil and criminal, courts must rely, to a large degree, upon counsel, to inform them of the contents of exhibits. Ordinarily courts may safely do so. In fact, it would take an unusual case to justify the granting of a new trial because of failure of counsel to protect the rights of his accused client. If any other rule were adopted, an accused defendant could hire an incompetent counsel and then, after conviction, employ an abler or more diligent counsel to appeal and assign the mistakes and omissions of his predecessor counsel as grounds for reversal. We are not asserting that counsel for the accused in this case was necessarily negligent in not reading the back of the exhibit in question. Facts (hereafter related) may have made him justifiably indifferent to this evidence. However, his *actions* as *representing defendant* are what is significant.

(b) Putting to one side, however, the fact that defendant is chargeable with the responsibility for this statement's reaching the jury room, and approaching its possible effect on the jury, we are confronted at once by the apparent lack of proof that the jury actually saw and read the exhibit. The burden of showing this statement reached the jurors,—of showing error,—is on the defendant. It is not sufficient that it *may* have reached them.

When the exhibits were identified (later admitted), they were material and important. They were a link in the chain of evidence establishing defendant's kidnapping of Hamilton who was thereafter killed. Later in the trial they became unimportant because of defendant's confession, and his testimony as his own witness. On both occasions he admitted all the facts which the fingerprints tended to establish. In other words, he admitted the kidnapping of Hamilton, the driving about in Hamilton's car in two or three states with Hamilton in his custody, his later killing Hamilton with a shot from the revolver which he had theretofore effectively used to kidnap his prisoners.

Of what interest to the jury then were the fingerprint photographs? Why should the jury study or even examine them? The facts they disclosed were not controverted. Defendant's punishment was the serious question over which the jurors were deliberating. This no doubt accounts for defendant's counsel's unusual lack of interest in the exhibits and his failure to examine them carefully. He doubtless then knew defendant was to take the stand, confirm his confession, and admit—what could not well have been denied—his action in kidnapping Hamilton and later killing him. Defendant's counsel's reliance, then, as here, was apparently on the unconstitutionality of the Federal Kidnapping Law, Title 18 U.S.C.A. § 408a. et seq. Hence his indifference to the exhibits showing defendant's fingerprints.

But it is idle to speculate over the possibility or the likelihood of the jurors' weighing this evidence. The burden was on the defendant to show that the jurors saw and read the statement in question.[1] He *failed to supply that proof* although the jurors could have established the fact if true. No juror testified that he saw or read it.

---

[1] Holt v. United States, 218 U.S. 245, at page 251, 31 S.Ct. 2, at page 6, 54 L.Ed. 1021, 20 Ann.Cas. 1138, "If the mere opportunity for prejudice or corruption is to raise a presumption that they exist, it will be hard to maintain jury trial under the conditions of the present day."

In other words, if the jurors saw and read the exhibits they could have been sworn and examined on the motion for a new trial, or their affidavits could have been presented in support of the motion.

The court in Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 52, 36 L.Ed. 917, settled the question, when it held that affidavits of jurors are admissible to prove the reading by them of a document not in evidence. In that case, defendant offered the affidavit of jurors to show that the sheriff improperly informed the jury of other crimes committed by the defendant, also that a newspaper commenting on the trial and argument of counsel was delivered to the jury while it was deliberating. The District Court held such affidavits could not be received or heard on the motion for new trial. On appeal this ruling was reversed.

The court said:

"The allowance or refusal of a new trial rests in the sound discretion of the court to which the application is addressed, and the result cannot be made the subject of review by writ of error * * *.

"In United States v. Reid, 12 How. 361, 366 [13 L.Ed. 1023], affidavits of two jurors were offered in evidence to establish the reading of a newspaper report of the evidence which had been given in the case under trial, but both deposed that it had no influence on their verdict. Mr. Chief Justice Taney, delivering the opinion of the court, said: 'The first branch of the second point presents the question whether the affidavits of jurors impeaching their verdict ought to be received. It would, perhaps, hardly be safe to lay down any general rule upon this subject. Unquestionably such evidence ought always to be received with great caution. But cases might arise in which it would be impossible to refuse them without violating the plainest principles of justice. It is, however, unnecessary to lay down any rule in this case, or examine the decisions referred to in the argument. Because we are of opinion that the facts proved by the jurors, if proved by unquestioned testimony, would

be no ground for a new trial. There was nothing in the newspapers calculated to influence their decision, and both of them swear that these papers had not the slightest influence on their verdict.' The opinion thus indicates that public policy, which forbids the reception of the affidavits, depositions, or sworn statements of jurors to impeach their verdicts, may in the interest of justice create an exception to its own rule, while, at the same time the necessity of great caution in the use of such evidence is enforced.

"There is, however, a recognized distinction between what may and what may not be established by the testimony of jurors to set aside a verdict. * * *

" 'Public policy forbids that a matter resting in the personal consciousness of one juror should be received to overthrow the verdict, because being personal it is not accessible to other testimony; * * * But as to overt acts, they are accessible to the knowledge of all the jurors; if one affirms misconduct, the remaining eleven can deny; one cannot disturb the action of the twelve; it is useless to tamper with one, for the eleven may be heard. Under this view of the law, the affidavits were properly received. They tended to prove something which did not essentially inhere in the verdict, an overt act, open to the knowledge of all the jury, and not alone within the personal consciousness of one.' * * *

"But a juryman may testify to any facts bearing upon the question of the existence of any extraneous influence, although not as to how far that influence operated upon his mind. So a juryman may testify in denial or explanation of acts or declarations outside of the jury room, where evidence of such acts has been given as ground for a new trial."

There are state courts which exclude this sort of proof but the Federal courts now uniformly hold that such affidavits are admissible.[2] While I have not found judicial precedents as numerous as those that support the last mentioned proposition, I am convinced that the affidavits or tes-

[2] Ogden v. United States, 3 Cir., 112 F. 523; Callahan v. Chicago, M. & St. Paul Ry. Co., C.C., 158 F. 988, 994; Stevenson v. Tenn. Copper Co., C.C., 193 F. 268; McKibben v. Phi. & Ry. Co., 3 Cir., 251 F. 577; McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300; City of Amarillo v. Emery, 5 Cir., 69 F.2d 626; Southern Pac. Co. v. Klinge, 10 Cir., 65 F.2d 85; King v. United States, 6 Cir., 25 F.2d 242; Fullerton v. Govt. of Canal Zone, 5 Cir., 8 F.2d 968; See also, Cyclopedia of Fed. Procedure, Sec. 2426; 90 A.L.R. page 249.

timony of third parties as to statements made by jurors to them are not admissible.[3] With nearly as great unanimity the courts have held the affidavits of counsel as to what jurors told them to be inadmissible on motion for new trial.[4]

In the instant case, there is before us nothing—not even the affidavit of counsel for defendant. When arguing orally in this court he volunteered the statement that he questioned a juror who told him that the jurors read the back of the photograph. The record shows no corroboration of such statement. The record contains no affidavit,—merely an unsupported motion for a new trial.

However, it is my view, that even though counsel's statement were set forth in an affidavit, and it had been made and presented to the District Court in support of the motion of a new trial, it would not change my conclusion, for the jurors, and they alone could supply the proof of extraneous influences,—such as here under consideration.

It therefore seems to me clear that the record fails to show that incompetent evidence reached the jurors.

Wigmore states the rule in his recent (third) edition of his treatise on evidence, thus (Sec. 2354(6): "So far as any of the foregoing facts may be evidenced at all by jurors, they should be evidenced by the juror's own testimony under oath, either by affidavit or on the stand, and not by his *hearsay statements* reported by others."

(c) There is another reason for refusing a new trial. The jurors could not have been prejudiced by the statement even if they read it.

Wherein lay the prejudice in this statement that defendant had been accused of a crime and the charge *dismissed for want of prosecution?* True, had such a question been asked and objected to, it would have been ruled out by the court. But we are considering, not its admissibility over objection, but its prejudicial effect. And this, on a motion for new trial.

It must be borne in mind that the jury was considering far more serious questions than a charge preferred *and dismissed* in the accused's earlier life.

Defendant was charged with, and by his confession and his own sworn story, was guilty of robbery with a gun for which he was serving a sentence, of escape from the penitentiary, of kidnapping, not merely Hamilton but two other innocent citizens, of "holding up" and robbing several places of business, of pointing a gun, and on his own admission, with intent to shoot and kill if funds were not produced, and finally of committing the offense of kidnapping an innocent young man (Hamilton)—a stranger to him—whom he also shot and killed.

To tell a jury that a mature man in possession of his mental faculties with such a record had once been charged with a felony which was *dismissed,* was harmless,—weighed nothing on scales whereon lay evidence so heavy and so damning. The jury was deliberating over the fate of a kidnapper, who had killed his victim.

The entire story, which is not contradicted came from defendant's own lips. He gave his own picture of a wilful, criminal, irresponsible personality, devoid of human qualities. He pictured himself as a robber bold, a deliberate, cold blooded hold-up gun man,—a killer. No heat of

[3] Gambon v. City of New York, 153 Misc. 401, 274 N.Y.S. 653; Lambert v. Caronna, 206 N.C. 616, 175 S.E. 303; Breeden v. Hurley, 13 Tenn.App. 599; Ward v. Morris, 159 Ga. 526, 126 S.E. 291; Askew v. Redwine Bros., 32 Ga.App. 540, 123 S.E. 906; Ruwisch v. Knoebel, 233 Ill.App. 526; Miller v. Berne Hardware Co., 64 Ind.App. 473, 116 N.E. 54; Beaubien v. Detroit United Ry., 216 Mich. 391, 185 N.W. 855; May v. City of Atlanta, 9 Ga.App. 391, 71 S.E. 499; Bauwens v. Goethals, 187 Ill.App. 563; Gregory v. Bijou Theater Co., 138 App.Div. 590, 122 N.Y.S. 1085; Messinger v. Antokolitz, 74 Misc. 588, 134 N.Y.S. 555.

[4] Noble v. Key Syst., 10 Cal.App.2d 132, 51 P.2d 887; Winters v. Bisaillon, 152 Or. 578, 54 P.2d 1169; Walter v. Ayvazian, 134 Cal.App. 360, 25 P.2d 526; Bennett v. Nazzaro, 144 Misc. 450, 258 N.Y.S. 828, affirmed 237 App.Div. 866, 261 N.Y.S. 1018; Williams v. Slaughter, 159 Okl. 254, 15 P.2d 27; Bourre v. Texas Co., 51 R.I. 254, 154 A. 82; Corbin v. McCrary, 22 Ga.App. 472, 96 S.E. 445; Johnson v. Smith, 118 Wash. 146, 203 P. 56; Pittsburgh, C. C. & St. L. Ry. Co. v. Collins, 168 Ind. 467, 80 N.E. 415; Waltham Piano Co. v. Freeman, 159 Iowa, 567, 141 N.W. 403; Broadway Bldg. Co. v. Saladino, 81 Misc. 73, 142 N.Y.S. 1076; Johnson v. Seel, 26 N.D. 299, 144 N.W. 237; Chicago R. I. & P. Ry. Co. v. Brown, 55 Okl. 173, 154 P. 1161.

passion prompted him: no grudge of long standing actuated him. He killed his victim without reason or excuse. He robbed other victims at the point of the gun to get money. He stole automobiles and levied tributes on their owners as a pirate of old. Yet his counsel now argues that the information which the jury obtained of an earlier felony with which he had been charged and which charge had been dismissed, affected their verdict.

Guilty by his own words of admission of a robbery with a gun, of three kidnappings, of three hold-ups at the point of a gun, and of murder, he asserts prejudice because of a statement he was also once charged with a felony which was dismissed for want of prosecution. The Court's credulity must have some boundaries. A reasonable limitation calls for the recognition of a difference between a possibility and a probability. Another necessitates one assuming that jurors are no less sensitive to their responsibilities than the rest of us or that their judgments are controlled by influences or arguments which would have no weight with anyone else.

Juries are not instruments upon whose alleged ignorance or unsophistication, defendants may rely to escape from the punishment of their crimes, when every other avenue of escape has been closed.

And in this connection what effect must be given to the fact that the statement declared the charge was *dismissed* for want of prosecution? Told by the court that they must predicate their verdict on the charge before them and on no other, defendant nevertheless asserts the jury disregarded instructions and based its verdict on a stray statement that defendant had once been charged with a felony which had been dismissed for want of prosecution. In weighing the possible prejudice of such a statement, it would be unfair to overlook that part which says the charge was *dismissed*. That statement carries to any man of reason, information more significant than the statement he was once charged with a felony.

Quite applicable to this situation is the case of Holmgren v. United States, 217 U. S. 509, 30 S.Ct. 588, 590, 54 L.Ed. 861, 19 Ann.Cas. 778, where an indictment was sent into the jury room by the order of the court. Unknown to the court the clerk had written on the back of this indictment the following words: "Arraigned Nov. 2, 1905. Mch. 14, 1906. Pleads not guilty. Tried April 5, 6, 7, 1906. Verdict not guilty on the 1st and 2d counts of the indictment, and guilty on the 3d count of the indictment. April 13, 1906. New trial is granted."

The Court said: "* * * The indorsement itself shows that a new trial was granted upon the former conviction on the third count. This action of the court in setting aside what the jury had formerly done is quite as likely to influence the jury favorably to the accused, as was the fact of former conviction by the jury to work to his prejudice."

(d) There is another ground for the affirmance of this judgment. It has repeatedly been held that the denial of a motion for a new trial in a criminal case, in the Federal courts, is not reviewable on appeal.[5] The court's ruling thereon is not ground for reversal.

---

[5] Ruling of District Court on Motion for New Trial reviewable only in exceptional cases: United States v. Socony-Vacuum Oil Co., 60 S.Ct. 811, 84 L.Ed. —, May 6, 1940; Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 53 S.Ct. 252, 77 L.Ed. 439; Moore v. United States, 150 U.S. 57, 14 S.Ct. 26, 37 L. Ed. 996; Henderson v. Moore, 5 Cranch 11, 3 L.Ed. 22; Texas & P. R. Co. v. Harvey, 228 U.S. 319, 33 S.Ct. 518, 57 L.Ed. 852; Kingman & Co. v. Western Mfg. Co., 170 U.S. 675, 18 S.Ct. 786, 42 L.Ed. 1192; Sparrow v. Strong, 3 Wall. 97, 18 L.Ed. 49; Holmgren v. United States, 217 U.S. 509, 30 S.Ct. 588, 54 L.Ed. 861, 19 Ann.Cas. 778; Embry v. Palmer. 107 U.S. 3, 3 S.Ct. 25, 27 L.Ed. 346; Blunt v. Smith, 7 Wheat. 248, 5 L.Ed. 446; Wright v. Hollingsworth, 1 Pet. 165, 7 L.Ed. 96; United States v. Engelsberg, 3 Cir., 51 F.2d 479, certiorari denied 284 U.S. 648, 52 S.Ct. 29, 76 L.Ed. 550; Cochran v. United States, 8 Cir., 41 F.2d 193; Collenger v. United States, 7 Cir., 50 F.2d 345, certiorari denied, 284 U.S. 654, 52 S.Ct. 33, 76 L. Ed. 554; Enrique Rivera v. United States, 1 Cir., 57 F.2d 816; Ryan v. United States, 7 Cir., 58 F.2d 708; Lefco v. United States, 3 Cir., 74 F.2d 66; Benetti v. United States, 9 Cir., 97 F.2d 263; Powell v. United States, 9 Cir., 35 F.2d 941; Quercia v. United States, 1 Cir., 70 F.2d 997; Pickett v. United States, 216 U.S. 456, 30 S.Ct. 265, 54 L.Ed. 566; Holder v. United States, 150 U.S. 91, 14 S.Ct. 10, 37 L.Ed. 1010; Wheeler v. United States, 159 U.S. 523,

Concede, we may, that there are exceptions to this rule and that appellate courts should and will set aside judgments which are believed to be influenced by incompetent information which reached jurors. This, I assume is on the theory that plain error, although not assigned, may be noted on appeal. But is this one of those exceptions? I think not.

There was, it should be emphasized, no error in the trial of this case. In reviewing the action of a trial court denying a motion for a new trial, weight must be given the judgment of the trial judge who saw and heard the evidence. He, quite as well as I, can say whether the evidence (which may (?) have reached the jurors) affected their deliberations, and equally pertinent, whether on a new trial on the same evidence (except the exhibits) a change in the verdict might be reasonably possible. He concluded it would not. I think the same. Even if I did not think so, it would not be decisive of the question. For we are here reviewing an order involving discretion on the part of the trial judge.

In the leading case of Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 5, 54 L. Ed. 1021, 20 Ann.Cas. 1138, we have a somewhat similar situation where the court said: "We are dealing with a motion for a new trial, the denial of which cannot be treated as more than matter of discretion or as ground for reversal, except in very plain circumstances indeed. Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917. See Holmgren v. United States, 217 U.S. 509, 30 S.Ct. 588, 54 L.Ed. 861 [19 Ann.Cas. 778]. It would be hard to say that this case presented a sufficient exception to the general rule. The judge did not reject the affidavit, but decided against the motion on the assumption that more than it ventured to allege was true. * * * If the mere opportunity for prejudice or corruption is to raise a presumption that they exist, it will be hard to maintain jury trial under the conditions of the present day. Without intimating that the judge

did not go further than we should think desirable on general principles, we do not see in the facts before us any conclusive ground for saying that his expressed belief that the trial was fair and that the prisoner has nothing to complain of is wrong."

In Holmgren v. United States, 217 U.S. 509, 30 S.Ct. 588, 590, 54 L.Ed. 861, 19 Ann.Cas. 778, the court was considering a situation heretofore described. The indictment contained an indorsement showing the conviction of the accused on a previous trial on the third count of the indictment. This indictment was permitted to be taken into the jury room. The court refused to disturb the order denying defendant's motion for a new trial, saying: "It has been frequently decided that the allowance or refusal of a new trial rests in the sound discretion of the trial court."

Quite similar also is the case of Quercia v. United States, 1 Cir., 70 F.2d 997, 999, a decision by the first circuit, wherein the court said:

"The appellant, after the verdict of guilty, filed a motion for a new trial on the ground that the indictment handed to the jury, when they retired for their deliberations according to the usual practice, bore the notations of the prior conviction. The fact is admitted, as well as the fact that no objection thereto was raised at the time by counsel for Quercia through oversight, no doubt, as both were familiar with the practice of handing the indictment to the jury on its retirement, and of the clerk's custom of noting on the back thereof the verdict of the jury and the sentence by the court.

"The granting of a new trial is within the discretion of the trial judge. The only issue of law involved on appeal is whether he has abused his discretion. The trial judge carefully considered all the circumstances in this case, together with fact that the jury must have realized, if they saw and read the notation of a prior conviction, that there had been error committed in the prior trial, and that the appellant was having a new trial. * * *

16 S.Ct. 93, 40 L.Ed. 244; Addington v. United States, 165 U.S. 184, 17 S.Ct. 288, 41 L.Ed. 679; Boyd v. United States, 9 Cir,. 30 F.2d 900; Block v. United States, 2 Cir., 9 F.2d 618; Neely v. United States, 4 Cir., 2 F.2d 849; McIntosh v. United States, 7 Cir., 1 F.2d 427; Noble v. United States, 9 Cir., 300 F. 689; United States v. McDonald,

D.C., 293 F. 433; Collins v. United States, 8 Cir., 219 F. 670; Allen v. United States, 7 Cir., 4 F.2d 688, certiorari denied Mullen v. United States, 267 U.S. 598, 45 S.Ct. 353, 69 L.Ed. 806; Bowers v. United States, 9 Cir., 244 F. 641; Linn v. United States, 2 Cir., 251 F. 476.

"We think the trial judge properly held that the granting of a new trial was a matter within his discretion, and no abuse of discretion is shown on this record."

In the recent case of United States v. Socony-Vacuum Company, supra, the Supreme Court said [60 S.Ct. 855]: "* * this case falls within the well established rule that neither this Court nor the Circuit Court of Appeals will review the action of a federal trial court in granting or denying a motion for a new trial for error of fact, since such action is a matter within the discretion of the trial court. * * * Certain exceptions have been noted, such as instances where the trial court has 'erroneously excluded from consideration matters which were appropriate to a decision on this motion'. * * *"

Upon the record before us, undisputed in all of its salient facts, it seems to me almost humanly impossible that any new trial could result differently. "Reversal would not promote the ends of justice." Such being the situation the court properly imposed a sentence which the law provided for the criminal transgressions such as the defendant committed.